## JULIUS TOBLER v. P. J. WILLIS & BRO.

(Case No. 1556.)

1. GUARANTY.— A guarantor, writing to a wholesale merchant, used in his letter the following language regarding his friend Winn, who wished to purchase goods: . . . "Should you sell and ship him this amount ($3,000), I hereby agree, bind and promise to pay you for the same. if Mr. Winn does not. Mr. Winn is to purchase his merchandise on open account and on regular terms, interest to be charged after maturity of bills; and so long as he continues to buy and purchase from your house I am responsible for and promise to pay you any debit you may have against him to the extent or amount of $3,000. And should Mr. Winn not pay the same, I agree and promise to pay said amount at your office in Galveston. (Signed) JULIUS TOBLER." *Held,*

    (1) That the guaranty did not bind the wholesale merchant to give the purchaser a "rolling credit" to the amount of $3,000 for three years.

    (2) The party receiving the guaranty had the right to cease extending credit, in his discretion. at any time.

    (3) The fact that the guarantor informed the wholesale merchant that he construed the guaranty to obligate an extension of a "rolling credit" for three years, did not alter or release his liability on sales afterwards made, there being nothing done to alter the terms or change the effect of the original guaranty.

2. SAME.— The judge trying the cause below found as follows: "I further find from the evidence that the meaning of the term 'rolling credit for three years,' within a given amount, according to mercantile usage of trade in Galveston, is that where purchases are made on sixty days' time, from time to time, under a 'rolling credit' for three years for $3,000, that the purchaser would not have the right to continue to purchase up to the given amount, unless upon paying the overdue accounts; but that the vendor would have the right to refuse further sales upon default of purchaser to pay overdue accounts promptly, notwithstanding the stipulation for rolling credit for three years up to a given amount." *Held,*

    (1) The presumption must prevail, in the absence of a statement of facts, that the evidence justified the finding.

    (2) The parties must, it will be presumed, have contracted with reference to the usage; the contract being made in Galveston, where the purchases were to be made, and were bound by it.

ERROR from Galveston. Tried below before the Hon. Wm. H. Stewart.

The opinion states the case.

*Chas. L. Cleveland,* for plaintiff in error.

*Mann & Baker,* for defendants in error.

STAYTON, ASSOCIATE JUSTICE.— This suit was brought by P. J. Willis & Bro. against Julius Tobler to recover the value of goods sold by the plaintiffs to D. M. Winn, upon the written guaranty of Tobler.

There is no question made as to the sum due by Winn for goods sold to him by the plaintiffs; but the guarantor denies his liability.

upon the ground that the terms of the guaranty were not complied with by the plaintiffs.

The written guaranty is as follows:

"P. J. WILLIS & BROTHER,

"Willis Building,

"GALVESTON, August 17, 1880.

"MESSRS. P. J. WILLIS & BROTHER, GALVESTON:

"My friend, Mr. D. M. Winn, doing business in Belton, Bell Co., Texas, desires to purchase of your house a general bill of merchandise amounting to the sum of three thousand dollars ($3,000). Should you sell and ship him this amount or any other amount less than this sum, I hereby agree, bind and promise to pay you for the same if Mr. Winn does not. Mr. Winn is to purchase his merchandise on open account and on regular terms, interest to be charged after maturity of bills; and so long as he continues to buy and purchase from your house, I am responsible for and promise to pay you any debit you may have against him to the extent or amount of three thousand dollars ($3,000). And should Mr. Winn not pay same, I agree and promise to pay said amount at your office in Galveston, Texas.

(Signed)    "JULIUS TOBLER.

"Witness: { THOMAS F. LAWSON,
{ W. S. BEADLES."

This guaranty contemplated a future course of dealing between P. J. Willis & Bro. and D. M. Winn, and that for an indefinite period and succession of purchases; and this course of dealing was subject to be terminated at the wish of either party, there being no period fixed by the instrument itself during which the business or course of dealing to which the guaranty related should continue.

The extent of the guarantor's liability was by the contract fixed at three thousand dollars ($3,000). The continuance of the dealing between the parties was to be "so long as he continues to buy and purchase from your house."

As Winn could not buy or purchase without the consent of the firm of P. J. Willis & Bro., whenever that consent was withdrawn the business necessarily terminated.

If the parties had intended to give Winn the right to buy for a fixed period of time, it should have been so expressed in the instrument which created the guaranty.

It is true that a guarantor is entitled to stand upon the terms of his contract, for it is the only source of his liability.

Contracts of guaranty, however, are to be construed as are other

contracts, the object in all cases being to ascertain the real intention
of the parties. If the contract be ambiguous, the court, by parol
testimony, may inquire into the situation of the parties and their
relation to the subject matter of the contract at the time the con-
tract was made, in order to understand what the parties meant by
the language they have used in contracting.

The contract of guaranty now before us is not ambiguous, and
parol evidence could not be heard to show, in contradiction to its
legal effect, that it was intended thereby, for a fixed period of time,
to confer upon Winn the right to purchase goods from P. J. Willis
& Bro. on credit, provided that credit did not exceed $3,000, as a con-
dition upon which the liability of the guarantor should attach.

It is true, also, that where a contract is ambiguous, the course of
dealing between the parties subsequent to the making of the con-
tract, and in reference to the subject matter thereof, which includes
correspondence between the parties, may be looked to; but where
there is no ambiguity in the contract, the rule which forbids the
introduction of parol evidence to contradict it excludes all such
testimony.

Such testimony may be received to show that the contract, by the
agreement of parties, has been annulled or satisfied, and that a new
one has been substituted in its place. The court below held that
the preponderance of the evidence negatived the existence of such a
contract as was set up by the appellant, and that holding, the evi-
dence in reference thereto, as it appears from the statement of the
judge, being conflicting, would be conclusive.

The defense sought to be maintained below, as against the original
contract of guaranty, cannot be sustained; and it only remains to
inquire whether or not that contract was ever annulled by the par-
ties and another substituted in its place.

Prior to the 24th of January, 1881, Winn had sent orders to
Willis & Bro. for goods; they had declined to fill them, and on that
day they wrote to Tobler the following letter:

"GALVESTON, January 24, 1881.

" JULIUS TOBLER, Esq.:

"*Dear Sir* — We have before us a letter of Mr. D. M. Winn, in-
closing a statement of his business, of which we send you a copy.
We see from his statement that his concern is doing no good, and
think you will see the same when you look at it. As we hold your
obligation to indorse for him for $3,000, we think the best thing for
you and for us is for you to take hold and pay us up our money which
is due, and let us wind up this account; we have got enough of it.

He puts in his own account as an asset, and a delivery wagon and a horse, etc.

"Let us wind it up and be done.

"Yours truly,

"P. J. WILLIS & BRO."

To which Tobler replied by letter of date February 1, 1881.

"Messrs. P. J. WILLIS. & BRO.:

"*Gentlemen* — In answer of your favor of 24th last month, would say I am surprised and disappointed at the turn affairs are taking. It was my understanding, but don't remember whether it was so expressed in writing, that you were to give Mr. Winn a rolling credit for $3,000 for about three years, and I am informed that you refuse to comply with your part of the contract, by declining to fill any more of Mr. Winn's orders, which places him in a very critical, or rather embarrassing condition, leaving him with a broken stock, without credit elsewhere to replenish, which will entail a serious loss to him. You were well aware and informed of the fact, that at the time you made the contract to furnish Mr. Winn with goods, that he had no money, and his only means of paying you was by the accumulation of profits, which would finally liquidate the original amount, if you had continued, according to agreement, to sell him. With a broken stock, with only a limited supply of those things most in demand, I don't see how he can pay at once. It was my understanding that Mr. Winn was to have a rolling credit, and thus be kept employed to pay for the goods and finally come out ahead; it was also my understanding and intention to be ultimately responsible to you for any deficit that he might owe you in the event you complied with your understanding.

"Very respectfully yours,

"JULIUS TOBLER."

To the above letter Mr. P. J. Willis, the senior member of the firm, made the following reply, on the 4th of February, 1881.

"GALVESTON, February 4, 1881.

"JULIUS TOBLER, Esq.:

"*Dear Sir* — Your letter of the 1st is to hand, and note. Inclosed find copy of the agreement you signed, which we hold as a guaranty for Mr. Winn's balance. Now, we are satisfied that Mr. Winn will not make a success of his business, but we think he will lose money; in fact, his showing to the 1st of January, 1881, shows he has lost money, and it was as much for your protection as for ours that we discouraged his orders. Now, if it is your wish, with the lights before you, that we continue to sell Mr. D. M. Winn on your guaranty, just say so and we will continue.

"The railroad will be taking freight to Belton in ten days, and if you wish us to stock him up, say so, and send on his orders. Let us hear from you in reply. Your obedient

"P. J. WILLIS & BRO."

That letter of P. J. Willis & Bro. inclosed a copy of the written guaranty of Julius Tobler.

In reply to the foregoing letter, Mr. Tobler, on the 9th of February, 1881, sent to plaintiffs the following letter:

"BELTON, TEXAS, February 9, 1881.

"Messrs. P. J. WILLIS & BRO.:

"Gentlemen—Your favor of the 4th inst. is before me, and replying, have to say I am gratified that you accept my understanding, and will give Mr. Winn the rolling credit named, and I will be responsible for any deficit, and save you from ultimate loss. I am desirous that he have a chance to make a success, and feel that he will. He sends forward his orders.

"Very respectfully yours,

"JULIUS TOBLER."

To the letter dated February 9, 1881, from Julius Tobler to P. J. Willis & Bro., the latter made no reply, but on the 16th of February, 1881, the plaintiffs resumed sales of goods to Winn, and between the 16th of February, 1881, and the 3d of May, 1881, the plaintiffs sold and delivered to Winn goods, wares and merchandise amounting to the sum of $1,490.06, upon which amount payments were made during the months of March, April and May to the sum of $678.44, leaving balance of these latter sales unpaid, amounting to $811.62, on the 1st of June, 1881, exclusive of interest on the overdue portions of these latter purchases.

As early as the 23d of May, 1881, Willis & Bro. declined to make further sales to Winn.

The letter of Willis & Bro. of date February 4, 1881, contains no intimation of any intention upon their part to change the terms of the original guaranty which Tobler had given; but upon the contrary, they thereby evidenced their intention to rely upon that guaranty, and expressly say: "Now, if it is your wish, with the lights before you, that we continue to sell Mr. D. M. Winn on your guaranty, just say so and we will continue."

At that time they could have had in mind no other guaranty than that which Tobler had originally given, for there was then in existence none other to which they could have referred; the letter of Tobler of February 9, 1881, which is in itself a guaranty, had not been at that time received.

The letter of Tobler of February 9th, which evidently referred to

his former letter of the 1st of February, indicates that he understood Willis & Bro. to acquiesce in his construction of the original guaranty, and was certainly entitled to a reply from Willis & Bro. before they made further sales to Winn; but it contains no declaration of his intention not to guaranty the payment for goods which Winn might subsequently buy, unless Willis & Bro. accepted his construction of the original guaranty.

That the parties differed as to the true construction and legal effect of the original guaranty, after it was executed, delivered and acted upon, cannot give it an effect which the law does not attach to it.

Had they met and expressed their different views in regard to the true construction of the instrument, and yet, with a knowledge that they so differed, without annulling it as to future dealings, continued to permit Winn to buy, they would both be bound by the guaranty. It was binding upon Tobler from its execution and delivery, and if he wished to terminate his obligation upon it for purchases made after the difference of opinion arose, it was his duty to have so declared in no uncertain terms.

The letter of Tobler of February 1st, together with the letter of Willis & Bro. of the 4th of that month, bear evidence that Tobler knew the construction which Willis & Bro. put upon the original guaranty, and of the right which they claimed, to cease to sell goods to Winn at any time.

Being so informed; such being their right under the guaranty; to continue his obligation under it requiring no new contract between him and Willis & Bro.; to annul its effect upon him in regard to sales subsequently to be made to Winn required an affirmative declaration from him that as to such transactions his existing guaranty should not apply. In the absence of such declaration, he must be held liable upon his guaranty for all the goods bought by Winn. Winn's orders were sent forward with his knowledge and consent, after the difference of opinion was expressed by the parties as to the legal effect of his guaranty.

There is another view of the case, however, which would be conclusive upon Tobler, even if his construction of the guaranty, that Winn was to have " a rolling credit for $3,000 for about three years," was correct; for the court found as follows: " I further find from the evidence that the meaning of the term 'rolling credit for three years,' within a given amount, according to the mercantile usages of trade in Galveston, is that where purchases are made on sixty days' time, from time to time, under a 'rolling credit for three

years' for $3,000, that the purchaser would not have the right to continue to purchase up to the given amount, unless upon paying the overdue accounts; but that the vendor would have the right to refuse further sales upon default of purchaser to pay overdue accounts promptly, notwithstanding the stipulation for 'rolling credit for three years up to a given amount.'"

There is no statement of facts, and in its absence it must be presumed that the evidence justified the finding of the court, and that the usage proved was such as under the settled rules of law the parties must be presumed to have had in view when they made the contract.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered March 6, 1883.]

Chief Justice WILLIE did not sit in this case.