UNITED STATES *v.* JOHANNESEN, (two cases.)

*(Circuit Court, S. D. Georgia, E. D.* May 3, 1888.)

1. INDICTMENT OR INFORMATION—INFAMOUS OFFENSE.
    Wherever, by the terms of the statute, the accused, upon conviction, may be confined in the state prison or penitentiary, the charge is "infamous" in the meaning of the constitution, and the prosecution must be by indictment or presentment.

2. INTERNAL REVENUE—VIOLATION OF LAWS—PROSECUTION BY INFORMATION.
    The offenses of violating the internal revenue laws, under Rev. St. U. S. §§ 3242, 3244, are punishable by a fine of not less than $1,000, nor more than $5,000, and imprisonment not less than six months, nor more than two years. Rev. St. U. S. §§ 5539, 5541, 5542, provide that a sentence of the United States courts to imprisonment for a period longer than one year, or to imprisonment at hard labor, may be ordered to be executed in a state prison or penitentiary. *Held,* that the punishment which may be imposed for these offenses is "infamous," and the prosecution must be by indictment or presentment of the grand jury, and not by information.

Criminal Informations against Otto Johannesen for violation of Rev. St. U. S. §§ 2865, 3242, 3244. Demurrer to informations.

*Du Pont Guerry,* for the United States.
*Denmark & Adams,* for defendant.

SPEER, J. Otto Johannesen is prosecuted by information for a violation of section 2865 of the Revised Statutes. The punishment therefor

is a fine not exceeding $5,000, or imprisonment for any term not exceeding two years, or both, in the discretion of the court. He is also prosecuted for a violation of sections 3242 and 3244 of the Revised Statutes. These are directed against breaches of the internal revenue laws. In the first count of the information last mentioned he is charged with carrying on the business of a wholesale liquor dealer. The punishment is a fine of "not less than one thousand dollars, nor more than five thousand dollars, and imprisonment not less than six months, nor more than two years." In the last count he is charged with carrying on the business of a retail liquor dealer. The punishment is the same on both counts. To both informations the defendant demurs, upon the ground that in each of the three charges he is accused of an "infamous crime," and can be proceeded against only by indictment or presentment of the grand jury. It is difficult to overestimate the importance and comprehensiveness of the question raised by this demurrer. It has been the steady practice of the officers of the government in the courts of the United States to prosecute upon the information of the United States attorney a very large class of cases which, if the demurrer is well grounded in law, can be prosecuted by indictment or presentment only. No doubt there are pending at this time many of these cases, and many prisoners may now be confined upon sentences pronounced on such informations. These informations are chiefly used to prosecute violations of the internal revenue laws. All cases of distillation, carrying on the business of a retail or wholesale liquor dealer, manufacturing stills, rectifying, removing distilled spirits on which the tax has not been paid, and in fact a large proportion of the crimes against the general government for the violation of internal revenue laws, are prosecuted in this manner. The supreme court of the United States, in the case of *Mackin* v. *U. S.*, 117 U. S. 348, 6 Sup. Ct. Rep. 777, have rendered an elaborate and exhaustive decision upon this question, and upon that case the defendant here relies. The prosecution was un 'er section 5440 of the Revised Statutes. The punishment prescribed was a penalty of "not less than one thousand and not more than ten thousand dollars," and "imprisonment not more than two years." In the circuit court the judges were divided in opinion upon several questions of law, and among them the following: "Whether the crime charged was infamous, within the meaning of the constitution of the United States, and whether the defendant would be held to answer other than on the presentment or indictment of the grand jury." These questions were certified to the supreme court. Mr. Justice GRAY, for the court, quoting that clause of the fifth amendment to the constitution which declares "that no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury," proceeds with great clearness and force in the discussion of the question in which the liberty of the citizen and the well-being of the community is so vitally involved. He declares the "test" by which to determine whether the prosecution can be maintained by information "is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous

one. When the accused is in danger of being subjected to an infamous punishment if convicted, he has the right to insist that he shall not be put upon his trial except on the accusation of the grand jury. No declaration of congress is needed to secure, or competent to defeat, the constitutional safeguard. What punishment shall be considered as infamous may be affected by the changes of public opinion from one age to another; and for more than a century imprisonment at hard labor in the state prison or penitentiary has been considered an infamous punishment in England and America." Citing *Ex parte Wilson*, 114 U. S. 417, 5 Sup. Ct. Rep. 935; and distinguishing *Hurtado* v. *California*, 110 U. S. 516, 4 Sup. Ct. Rep. 111; *U. S.* v. *Waddell*, 112 U. S. 76, 5 Sup. Ct. Rep. 35; *Kurtz* v. *Moffitt*, 115 U. S. 487, 6 Sup. Ct. Rep. 148. Attention is then called in the decision to the express provisions of the acts of congress, (Rev. St. §§ 5539, 5541, 5542,) by which it is provided that a sentence of the United States courts "to imprisonment for a period longer than one year, or a sentence to imprisonment and confinement to hard labor," may be ordered to be executed in a state prison or penitentiary; and that the convict while thus imprisoned is "subject to the same discipline and treatment as convicts sentenced by the courts of the state." The court states that it has not been found necessary to consider how far a convict from a United States court can be put to work in a state penitentiary when not in terms sentenced to hard labor; for, to use the language of the court, "we cannot doubt that at the present day imprisonment in a state prison or penitentiary, with or without hard labor, is an infamous punishment. It is not only so considered in the general opinion of the people, but it has been recognized as such in the legislation of the states and territories, as well as of congress." This was the finding of a unanimous court. In *Ex parte Bain*, 121 U. S. 1, 7 Sup. Ct. Rep. 781, the holding is reiterated, Mr. Justice MILLER delivering the opinion, again, of a unanimous court. Thus we see how the liberalizing and humane tendencies of the law are advanced by the progressive steps of that illustrious tribunal. In *Ex parte Wilson*, *supra*, the holding was that a crime punishable by hard labor in the state prison or penitentiary is infamous. Now, it is held that imprisonment in the state prison or penitentiary is infamous. It follows logically that since the defendant Johannesen can invoke the "test" established,—namely, that the court might award an infamous punishment, because he may be imprisoned in a state prison or penitentiary, subject to the same discipline and treatment as convicts sentenced by the courts of the state,—that he is entitled to the benefit of the constitutional provision that he may not be held to answer the charge, unless upon presentment or indictment by a grand jury. Startling as is the proposition to a people who have been habituated to prosecutions upon information in cases of this character, the practice must cease, and hereafter the courts of the United States will take no action in the large class of cases where imprisonment in the state penitentiary or prison may result, save after the presentment or indictment by the grand jury. This is now the "law of the land," as firmly fixed as the equivalent or kindred provision of *magna charta*, of which Mackintosh

declares: "To have produced it, to have preserved it, to have matured it, constitute the immortal claim of England upon the esteem of mankind." It should be a source of profound congratulation to the patriotic and the law-abiding that even the apparent necessity to proceed by information in cases of this class has departed; that the people of a unified country are laboring peacefully in the rich fields of an advancing civilization; that crime is rare; that the impartial and law-respecting investigations of the grand juries will bring to the bar of justice the willful law-breaker, but will in all likelihood discountenance the sinister and malevolent informer who has used the powers of the government to purvey to his malice, or his greed for the perquisites of the witness for prosecution.