76  25
83  619
84  614

### B. H. GARDNER, ADMINISTRATOR, V. C. L. WATSON.

#### No. 2803.

1. **Guaranty—Construction.**—Guaranties, like other contracts, must be construed so as to give effect to the intention of the parties, and if upon their face the intention be doubtful, resort may be had to parol evidence of the situation and surroundings of the parties in order to solve the difficulty.

2. **Same—Example.**—The following contract was executed March 27, 1883, instead of another between same parties made November, 1881, which had been acted upon as a continuing guaranty, viz.: "I have to-day seen Chas. E. Grayson, and upon consulting with him I am willing to become his security to the amount of $500 worth of goods, instead of $250 as heretofore, provided you extend to him a credit of $500 worth of goods additional on his own individual account or responsibility." The guaranty was accepted and acted upon. *Held*, that said guaranty was a continuing security.

3. **Agency—Appropriation of Payments.**—A clerk of the creditor negotiated with the principal debtor. The clerk was instructed by his employer not to release the guaranty. *Held*, that the debtor had the power in making payment or in giving further security to appropriate such payment or security to that indebtedness for which the guarantor was liable, and this power would not be affected by the limited power of the clerk acting for the creditor in accepting the security so appropriated.

4. **Release of Guarantor — His Assent to New Contract.** — The principal debtor and the creditor contracted touching an open account over due, by which the debtor transferred valuable property as security, extended the time four days, and increased the rate of interest. *Held*, that to bind the guarantor upon the new contract it devolved upon the creditor to prove the consent of the guarantor.

5. **Presumption in Absence of a Finding by Court.**—When there is no finding upon an issue upon which the evidence is conflicting, the court below will be presumed to have arrived at that conclusion which is necessary to support the judgment.

APPEAL from Freestone.    Tried below before Hon. Rufus Hardy.

Suit was brought February 22, 1888, by appellee against B. H. Gardner, as administrator of the estate of L. D. Bradley, deceased, on two notes amounting to over $1000.    It was shown by the pleadings and evidence that defendant Gardner was entitled to a credit of $300, as of date August 1, 1888; and it was "further agreed that in addition to the following, defendant Gardner is entitled to a credit or offset of $500, with interest at 8 per cent per annum from January 1, 1885, unless it should appear to the court on further showing to be made by plaintiff that the estate of L. D. Bradley, deceased, is liable to said plaintiff to the amount of said $500, as endorser for one C. E. Grayson, and this last matter is to be submitted to the court as the only contested issue in the case."

C. E. Grayson was brought in as a party defendant.    On the $500 issue

appellee relied upon the following paper, which he claims, and the court held it, to be a continuing guaranty:

"GROESBEECK, March 27, 1883.

"*Messrs. C. L. Watson & Bro., Mexia:*

"GENTLEMEN—I have to-day seen Charles E. Grayson, and upon consulting with him I am willing to become his security to the amount of $500 worth of goods, instead of $250 as heretofore, provided you extend to him a credit of $500 worth of goods additional on his own individual account or responsibility.

"Yours, truly, etc.,

"L. D. BRADLEY."

The pleadings and evidence showed that said Watson advanced or sold to said Grayson during 1883, and after March 27, goods to the amount of $1481.30 in addition to his previous indebtedness of $884.68. That Grayson paid during the year 1883 $1233.94, leaving a balance at end of the year of $1132.04. That said firm furnished during 1884 to Grayson, and up to closing of said business, goods to the amount of $1010.62, and Grayson paid during that time $524.28, leaving balance on January 14, 1885, of $1618.40.

Defendant claimed that said instrument of March 27, 1883, was not a continuing guaranty; that it had been paid by Grayson, and if not paid before, that on January 14, 1885, the business of Grayson was wound up by turning over to Watson property amounting to $460, and notes and accounts amounting to about $1300, said Grayson giving to said Watson on said January 14, 1885, his note for $1261, due one day after date, with 12 per cent interest per annum from date till paid. The notes and accounts were taken as collaterals, and said new note was credited with collections on same in the sum of $306.42, average date November 15, 1885; and by said settlement and new note and delay said Bradley was released.

Defendant also pleaded that in said settlement of January 14, 1885, it was understood and expressly agreed that Bradley was to be released from further liability on Grayson's account. The court decided the above issue against defendants, and gave judgment for Watson for $901.78 and all costs against Gardner, as administrator, and in favor of said Gardner, as administrator, against Grayson for $660 and all costs. Motion for new trial being overruled, notice of appeal was given by both defendants.

Other facts are disclosed in the opinion.

*B. H. Gardner* and *G. A. Bell*, for appellant. — 1. When, by the terms of the guaranty, it is evident the object is to give a standing credit to the principal, to be used from time to time, then the liability is continuing; but when no time is fixed and nothing in the instrument indi-

cates a continuance of the undertaking, the presumption is in favor of a limited liability.    Fellows v. Prentiss, 3 Denio, 512.

2.    When part of a debt is secured and the other not, the debtor at the time of payment has the right to apply it to which debt he pleases. If he fail to appropriate it, the creditor can, with some exceptions, apply it at his election.    If both fail, it will be applied by law according to the equity and justice of the case.    Taylor v. Coleman, 20 Texas, 772; McAlpin v. Ziller, 17 Texas, 514, 515; Merriman v. Fulton, 29 Texas, 98; Kinner v. Dilley, 3 Ct. App. C. C., sec. 406.

3.    The principal can not repudiate the agreement of his agent without placing the party dealing with the agent in *statu quo*.    McAlpin v. Ziller, 17 Texas, 514, 515; Merriman v. Fulton, 29 Texas, 98; Kinner v. Dilley, 3 Ct. App. C. C., sec. 406.

4.    If creditor takes a new note from the principal, with interest added in and with a higher rate of interest, payable at a future day and with collateral security, it operates as a discharge of guarantor.    Fellows v. Prentiss, 3 Denio, 512; Johnson v. Mills, 25 Texas, 704.

5.    A guarantor is entitled to notice of acceptance of his guaranty. Fellows v. Prentiss, 45 Am. Dec., 484, 493; Oakes v. Weller, 37 Am. Dec., 583; Burge on Sure., sec. 157; Garrett v. Ins. Co., 1 Ct. App. C. C., sec. 937; Brandt on Sure. and Guar., secs. 157, 159, 163, 167; Wilson v. Childers, 2 Ct. App. C. C., sec. 428.

*L. J. Farrar,* and *R. S. Gardner,* for appellee. —1.    A written instrument should be so construed as to give it that effect which shall best accord with the intentions of parties to the transaction.    Menard v. Scudder, 56 Am. Dec., 610.

2.    A letter of credit will be construed as continuing guaranty when it has so been treated and its terms are not inconsistent with this construction, although taken alone it would be construed as a single guaranty; and further, "a letter of credit must be construed by its own terms, but the general rule is, they should be liberally construed."    Bank v. Peck, 65 Am. Dec., 234; Lowe v. Beckwith, 58 Am. Dec., 659; Tootle v. Elqutter, 45 Am. Rep., 103.

3.    A continuing guaranty is liable for any debt not exceeding the amount specified which might be incurred under it, although an antecedent debt of the same amount might have been created on the faith of it, and have been previously paid; and it is not confined to one instance, but applies to debts successively renewed.    Lowe v. Beckwith, 58 Am. Dec., 659; Douglass v. Reynolds, 7 Pet., 113; Merle v. Wells, 2 Camp., 413.

4.    A principal is not bound by the agent's acts, unless the same was done in performance of his delegated power.    Keener v. Harrod, 56 Am. Dec., 706; 1 Wait's Act. and Def., pp. 224, 225, 228.

5.    If authority of agent is particular and special it must be strictly

pursued, and if the agent vary from it his act is void as to his principal. Brown v. Johnson, 51 Am. Dec., 118.

6. A ratification of an unauthorized act must, in order to bind the party against whom it is set up, be made with a full knowledge of all the material facts, and if the material facts be unknown to such party there is no ratification. 1 Ct. App. C. C., sec. 248; 18 Texas, 811; 27 Texas, 120; Story's Agency, sec., 251a.

7. Novation in order to operate as an extinguishment of an original debt must show that by the terms of the substitution the creditor expressly indicated his intention of releasing the original debtor. Bonnemer v. Negrete, 35 Am. Dec., 276; Lutterloh v. McIlhenny Co., 74 Texas, 73; Wadsworth v. Allen, 56 Am. Dec., 137.

8. A guarantor is entitled to notice that his guaranty is accepted, unless such notice is implied from the transaction. Thompson v. Glover, 39 Am. Rep., 220, and authorities cited.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by appellee to recover of appellant, as administrator of the estate of L. D. Bradley, deceased, an alleged indebtedness amounting to about the sum of $1000, besides interest. Upon the trial it was agreed between the parties, in effect, that the indebtedness accrued as is alleged in the petition, but that defendant was entitled to an offset of $300. It was further stipulated that defendant was entitled to an additional offset of $500, unless it should be determined upon the trial that defendant's intestate was indebted to plaintiff, as surviving partner of the firm of C. L. Watson & Brother, in the last named sum, by reason of a contract of guaranty executed by Bradley to plaintiff to secure him in payment of $500 of an indebtedness contracted by one Grayson. The question was whether Bradley's indebtedness to Watson arising out of the guaranty had been discharged or not.

The facts in relation to that matter are as follows: Watson & Brother were merchants and Bradley and Grayson were brothers-in-law. Grayson being about to enter into business as a retail merchant on a small scale, applied to Watson & Brother for credit. Bradley agreed with Watson & Brother that he would guaranty Grayson's account to the amount of $250, provided they would extend him upon his own responsibility credit for a like amount. This occurred in November, 1881. The proposition was accepted and the credit given. Grayson continued buying of Watson & Brother during the remainder of the year 1881, the year 1882, and the early part of the year 1883. He made payments upon his account from time to time during this period, but never fully discharged his indebtedness. Watson & Brother having declined to sell Grayson any more goods without additional security, on March 27, 1883, Bradley executed the following guaranty:

"GROESBEECK, March 27, 1883.

*"Messrs. C. L. Watson & Bro., Mexia:*

" GENTLEMEN—I have to-day seen Charles E. Grayson, and upon consulting with him I am willing to become his security to the amount of $500 worth of goods, instead of $250 as heretofore, provided you extend to him a credit of $500 worth of goods additional on his own individual account or responsibility.

"Yours, truly, etc.,

[Signed]                                    "L. C. BRADLEY."

The guarantee was accepted and the credit extended, and Grayson continued to buy of the Watsons and to make them partial payments until about the 1st of January, 1885, when he failed.   At the time he closed his business he was indebted to Watson & Brother in the sum of $1618.40. Shortly after this date he transferred to them certain property, which they took upon account and for which they gave him credit, and for the balance remaining, amounting to $1261, he executed to them his note and transferred to them certain credits collaterally to secure its payment. From these Watson & Brother collected the sum of $306.42, for which they gave him credit.   Grayson testified that he made the settlement with the agent of Watson & Brother, and that he transferred the property and gave the security with the express agreement that Bradley was to be released.   The plaintiff testified that when he sent the agent, who was only his bookkeeper, to make the settlement he instructed him not to release Bradley, and that having heard subsequently that Grayson had stated that Bradley had been discharged, he asked him if he had made such a statement, and that he denied that he had ever done so.   Grayson on the other hand testified that he had no such conversation with Watson.

The court held that Bradley's liability upon his guaranty had never been discharged, and refused to allow defendant the $500 offset against the indebtedness sued upon.

It is first claimed by appellant that Bradley's contract was not a continuing guaranty, and that being bound only for one-half of the first $1000 credit extended after the execution of the contract, his liability was extinguished by the payment by Grayson of that amount.   There is no especial rule by which we can determine whether a contract of guaranty is a continuing one or not.   Guaranties, like other contracts, must be construed so as to give effect to the intention of the parties, and if upon their face the intention be doubtful, resort may be had to parol evidence of the situation and surroundings of the parties in order to solve the difficulty.   Hotchkiss v. Barnes, 34 Conn., 27; Heffield v. Meadows, Law Rep. 4 C. P., 595.   If we were confined to the face of the guaranty now in question it would be very difficult to determine whether it was intended to apply only to the first credit of $500 extended to Grayson and was exhausted when goods to that amount were taken up by him,

or whether it was to continue in operation and extend to any subsequent purchases he might make, limited only by the amount intended to be secured. Taking the language alone, it would be easy to find precedents warranting a decision either way. See instances in Brandt on Sure., secs. 131-37.

But when viewed in connection with the situation and the previous transactions between the parties, the question is not difficult of solution. In the first place, Grayson was attempting to carry on a mercantile business, and was almost wholly without capital or credit. It is hardly probable that a guaranty which was to be exhausted by the first extension of a credit to the amount of $500 would be sufficient to accomplish the object that any of the parties had in view—that is to say, to enable Grayson to prosecute and to continue his business. Then again the guaranty in question is not an original transaction. Its terms show that it is but an extension as to amount of a former contract. The face of the paper shows that the guarantor regarded the former contract as still existing. That contract had been executed more than a year, and secured a credit of $250, and under it Grayson had bought goods to the amount of $2000, and had paid Watson & Brother the amount secured several times over. If it had not been a continuing guaranty it would have been exhausted when the first goods to the amount of $250 was sold upon its faith, and Bradley's liability would have been discharged when they were paid for. Yet the language of the promise is: "I am willing to become his security to the amount of $500 worth of goods, instead of $250 as heretofore," clearly implying, we think, that the writing recognized his former obligation as a continuing one, and was intended to keep it in force and to increase the amount. We think the court did not err in holding that the contract was intended as a continuing guaranty.

Was Bradley's liability discharged by the transaction between Grayson and Watson's agent? If we should be guided alone by the statement of facts we should be inclined to answer that question in the affirmative. If, as Grayson testified, it was agreed between him and the agent that Bradley should be released, we think the transaction would have that effect, although the agent exceeded his powers in making that stipulation. In the transaction Grayson transferred to Watson property amounting to about $300, and also notes and accounts from which his creditor realized $300 more. Grayson had the right to transfer this property to Bradley directly to secure him against loss on his guaranty. Hence we do not see why he did not have the right to direct the appropriation of any payment he might make to Watson to that part of his indebtedness which was guaranteed by Bradley. Although the agent of Watson may have had no authority to release Bradley, yet if it were a fact that he and Grayson did so agree, the property transferred in the transaction ought to be deemed to be applied to the discharge of Bradley's indebtedness. The

agreement would at least show a clear intention to make the appropriation; and the debtor having the right to make the appropriation, it should be given effect, although the agent was not authorized to stipulate for Bradley's release. But the trial judge, in his conclusions of fact, did not find that any such agreement was ever made as was testified to by Grayson. It is not clear whether or not he intended to find the contrary. The court, however, did find that Grayson had never made the application of any payments to the discharge of Bradley's liability, and that the note executed by Bradley at the time of the settlement between him and Watson's agent "was not intended by the parties to discharge the obligation of L. D. Bradley." We infer from these findings that the court did not give full credit to Grayson's testimony. If Watson was to be believed, Grayson had made statements to him inconsistent with the idea that there had been any agreement with Watson's agent for the release of Bradley. Grayson denied that any such conversation had taken place. Still there is such a conflict that the finding of the judge against the existence of the agreement should perhaps stand, if in fact he did so find.

But should we treat the case as if there had been no distinct finding upon the issue, appellant would not be placed in a better position. There was no request made for an additional findings of fact upon this special issue, nor was there any exception to the conclusions of fact on the ground of incompleteness. When there is no finding upon an issue upon which the evidence is conflicting, the court below will be presumed to have arrived at that conclusion which is necessary to support the judgment. If, therefore, the conclusions filed by the judge should be construed as not embracing the issue in question, we should, nevertheless, be compelled to hold that he had found that the agreement was not in fact made.

If there was no appropriation of the property turned over by Grayson to Watson's agent to the payment of that part of the debt secured by Bradley, then Bradley was not discharged by the payment.

But closely connected with the question just discussed is another, which is presented by an assignment which, in effect, complains that the court erred in holding that Bradley was not discharged by Watson taking Grayson's negotiable promissory note. Neither the pleadings nor the evidence very distinctly present the facts bearing upon this issue in the case; but in the conclusions of law the court held "that in order to maintain a guarantor's claim of discharge from his obligation, there ought to be shown, first, an intention and actual discharge, or, second, some action or conduct on part of the guarantee whereby the condition of the guarantor was rendered worse." From this we infer that it was the opinion of the court that in order for the guarantor to claim a discharge by reason of a valid contract for an extension of time entered into between the creditor and principal debtor, he must show that he has been actually injured by

the extension. That such is not the law is well settled by the decisions of this court. Lane v. Scott, 57 Texas, 367; Ryan v. Morton, 65 Texas, 258.

The cases cited involved the rights of sureties, but the principles announced apply with equal force to the case of guarantors. Samuel v. Howarth, 3 Mer., 272."

The answers of the defendant state the fact of the extension of the contract by the execution of the note by Grayson, but fail to allege that the extension was granted without Bradley's consent. There was no evidence bearing upon that question. In a different case it might be an important inquiry whether the burden was not upon the defendant to allege and prove that he did not assent to the new contract in order to avail himself of its execution as a defense. But it is alleged in plaintiff's supplemental petition that the debt which was guaranteed (it being an open account for goods sold in previous years) was due in January, 1885, and that Grayson, after having transferred to plaintiff some property, the value of which was credited thereon, executed to him a note for the balance, including the sum of $500 for which Bradley had become liable as guarantor. The note, which was made a part of the petition, extended the debt four days (including the days of grace) and stipulated for a higher rate of interest, and was secured by a contemporaneous transfer of choses in action as collaterals to secure its payment.

The plaintiff also alleged, in effect, that the settlement was made and the transaction consummated at the instance of Bradley. According to these allegations, here was certainly a new contract. The length of time is unimportant, provided it be for a definite period and there be a consideration to support the promise of extension. The promise to pay an increased rate of interest and the transfer of the collaterals on part of Grayson were sufficient to make the new contract binding. The old contract and the new are materially different, and the latter extinguished the former. The amount for which Bradley had bound himself being embraced in the new agreement, he was bound upon that contract if at all. He could not be bound by an agreement to which he had never assented, and therefore we think that in order to hold him liable it was incumbent upon plaintiff to allege and prove his consent.

In Lane v. Scott, *supra,* in treating of the right of a surety to pay the debt on or after maturity, and then to proceed against his principal for indemnity, the court say: "This, however, he could not do if in the meanwhile the creditor had made a binding agreement varying in an essential particular the original contract. In such cases the surety is not bound by that, for it has ceased to exist; nor by the new contract, for he is not a party to it."

As the case is now presented to us, we think the liability of Bradley's estate depends upon the question whether he assented to the new contract or not. There being no evidence to show that he did assent, we think

the judgment should be reversed; and it being impossible to determine the question from the record before us, the cause will be remanded for a new trial.

*Reversed and remanded.*

Delivered February 4, 1890.