COOPER GROCERY CO. v. NEBLETT et al.
(No. 8779.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 26, 1918. On Rehearing, April 20, 1918.)

1. WITNESSES ⟞48(2) — COMPETENCY—CONVICTION OF "INFAMOUS CRIME."
   In the absence of any statute changing the common-law rule for trial of civil cases, a conviction and imprisonment in a federal penitentiary for retailing liquor without paying the special tax would not render a person infamous so as to render him incompetent as a witness, although Pen. Code 1911, art. 55, renders an offense so punishable a felony.

2. WITNESSES ⟞345(1) — IMPEACHMENT — CONVICTION OF CRIME.
   Conviction of crime not infamous under the common law is not admissible to impeach testimony.

3. WITNESSES ⟞140(19) — COMPETENCY — HEIRS—CONVEYANCE OF INTEREST.
   Testimony of an heir precluded by Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, is not rendered admissible by a conveyance of the interest of the witness for the sole purpose of rendering him competent.

4. EVIDENCE ⟞433(6)—PAROL—MISTAKE.
   Where it was alleged there was a mutual mistake as to part of guaranty contract creating liability in excess of $1,000, it was admissible to show that the president of plaintiff corporation and its attorney had construed it as a guaranty for only $1,000, and had originally sued for such amount; the theory being that certain fine print had been overlooked by plaintiff's agent and defendant.

5. EVIDENCE ⟞265(13) — ADMISSIONS — EXPLANATIONS.
   Where mutual mistake was alleged in that certain fine print in a contract of guaranty was overlooked, admissions of officer of plaintiff showing that he had overlooked such fine print, and introduction of copy of an original petition of plaintiff for amount guarantor contended the contract covered, were not rendered inadmissible as admissions by an explanation by plaintiff that they were made under an erroneous impression.

6. TRIAL ⟞352(1)—SPECIAL ISSUES—REPETITION.
   A special issue as to whether defendant and plaintiff did not understand that a guaranty contract was only for $1,000 was not a repetition of an issue as to whether defendant relied on such a representation by plaintiff, both fraud and mutual mistake having been alleged.

7. REFORMATION OF INSTRUMENTS ⟞19(1)— MUTUAL MISTAKE—GUARANTY.
   If a guaranty was executed and accepted under a mistaken belief as to its amount, equity will reform the instrument.

8. GUARANTY ⟞54—DISCHARGE OF GUARANTOR—MATERIAL CHANGES.
   A change in a contract of indebtedness, increasing interest from legal rate of 6 to 10 per cent. on past due interest, and a change making place of payment in a county other than debtor's residence, were both material and would release a guarantor.

9. GUARANTY ⟞90 — EVIDENCE—MATERIALITY.
   In action on contract of guaranty, evidence of expenses incurred by guarantor in procuring a change of venue was immaterial, where the issues were as to the scope of the contract, which was in writing and unambiguous.

10. GUARANTY ⟞25(3) — MISREPRESENTATIONS—SUFFICIENCY OF EVIDENCE.
    That president and attorney of plaintiff corporation construed a contract of guaranty as being for only $1,000, and originally sued for such amount, was not alone sufficient to show that an agent represented it to cover only such amount, or that he misled the guarantor.

11. GUARANTY ⟞25(3)—MUTUAL MISTAKE—SUFFICIENCY OF EVIDENCE.
    That president and attorney of corporation had originally construed a contract of guaranty to cover only $1,000, and had originally sued for such amount, was not alone sufficient to sustain a finding of mutual mistake between a corporation agent and defendant; the contract covering more than $1,000.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Suit by the Cooper Grocery Company against Frank Neblett and J. W. Neblett. The last-named defendant dying after institution of suit, Mrs. E. A. Neblett, as his executrix, was substituted as a party defendant. From a judgment against the first defendant, but in favor of the executrix, plaintiff appeals. Affirmed.

W. E. Spell, of Waco, A. P. Young, of Stephenville, and Davis & Cocke, of Waco, for appellant. Chandler & Pannill, of Stephenville, for appellees.

DUNKLIN, J. The Cooper Grocery Company, a private corporation, instituted this suit against Frank Neblett and J. W. Neblett to recover the unpaid balance of four promissory notes given for groceries sold by plaintiff to Frank Neblett. Plaintiff sought to hold J. W. Neblett liable upon an alleged written guaranty of the debt. After the institution of the suit, J. W. Neblett died, and his widow, Mrs. E. A. Neblett, who was the independent executrix of his last will and testament, was made a party defendant; and from a judgment in her favor the plaintiff has prosecuted this appeal.

The disposition of a former appeal of this case is reported in 180 S. W. 1162. The trial

from which that appeal was prosecuted resulted in a judgment in favor of Frank Neblett and against the executrix. Judgment in favor of Frank Neblett, of which no complaint was made, was left undisturbed, and therefore became final; but the judgment against the executrix was reversed, and the cause remanded for another trial of the issues between her and the plaintiff.

In addition to the plea of misjoinder of causes of action, which plea was overruled on the former appeal as shown in the opinion, Mrs. Neblett further pleaded that the signature of J. W. Neblett to the written guaranty alleged in plaintiff's petition was procured by false and fraudulent representations made to him by plaintiff's agent, H. W. Carver, in that prior to the execution of the instrument it was orally agreed, by and between J. W. Neblett and Carver, representing plaintiff, that the former would execute an instrument in writing guaranteeing all of Frank Neblett's past indebtedness, not exceeding the sum of $1,000; that, immediately after such oral agreement was reached, J. W. Neblett executed the instrument of guaranty, which was partly in writing and partly in print, and consisted of a printed form, with blanks filled out in writing by Carver, and contained a written guaranty of Frank Neblett's indebtedness to the plaintiff already incurred, not to exceed the sum of $1,000; that Carver then represented to him, in effect, that that was the extent of the guaranty; that Neblett believed said representation, and relying thereon, executed the instrument without reading it; that said representation was false and fraudulently made, in that the instrument sued on was a guaranty of all indebtedness that might be incurred by Frank Neblett after the execution of the instrument, in addition to his prior indebtedness, and that by reason of such misrepresentation the instrument of guaranty was void and of no legal effect. The executrix alleged, further, that after the execution of the guaranty Frank Neblett's contracts of indebtedness to the plaintiff were changed in material respects without the consent of J. W. Neblett, who was thereby released from his contract of guaranty. It was further alleged that, after the execution of the written guaranty Frank Neblett conveyed to the plaintiff certain notes and accounts due him, and at the same time executed to plaintiff his promissory notes sued on by plaintiff, and as a part of the consideration therefor the plaintiff agreed with Frank Neblett to discharge J. W. Neblett from any liability upon the guaranty; that thereafter plaintiff collected more than $1,000 on the accounts so transferred to it; that by reason of those facts plaintiff could not recover against the executrix. As a further defense the executrix alleged, in substance, that prior to the execution of the guaranty it was the intention of J. W. Neblett and Carver, representing the plaintiff in procuring the execution of the instrument, that the guaranty of J. W. Neblett should not exceed $1,000 of Frank Neblett's indebtedness; that both Carver and J. W. Neblett intended that the written guaranty should be so drawn, and both understood that it so stipulated, and such was the intention and understanding of both of them at the time the guaranty was executed and delivered by J. W. Neblett, and at the time it was executed it was the intention and understanding of both J. W. Neblett and Carver that the guaranty should cover indebtedness theretofore incurred by Frank Neblett, not exceeding the sum of $1,000, and that the guaranty should not be for any other amount.

All of those defenses were put in issue by appropriate pleadings filed by plaintiff. The written guaranty sued on and introduced in evidence was procured by H. W. Carver, representing the plaintiff, and is as follows:

"In consideration of the sale of any kind of merchandise by the Cooper Grocery Company to Frank Neblett, I, we, or either of us hereby guarantee to them and their assigns, unconditionally, the payment of any indebtedness of said Frank Neblett now existing from the said Frank Neblett to the said the Cooper Grocery Company, now residing and doing business in the city of Waco, county of McLennan, state of Texas, not exceeding the sum of one thousand and no/100 dollars, and any indebtedness created on this day or hereafter, until notice in writing, and I, we, or either of us consent to any extension of payment made, or hereafter made, and waive notice thereof, and waive the necessity of protest, notice, and suit in all cases between said parties, and consent that the form of said indebtedness may be changed from account to note, bill, or other commercial paper; and I, we, or either of us agree to pay interest at the rate of ten per cent. per annum from date agreed upon by said purchasers, and 10 per cent. attorney's fees if said debt is placed in the hands of an attorney for collection; (and I, we, or either of us further guarantee that said indebtedness shall be paid in Stephenville, Erath ~~Waco, McLennan~~ county, Texas, and we waive the right to be sued elsewhere.) In testimony of which, I—we set my—our names at Stephenville, Texas, on the 19th day of July, 1910.

"Witnesses:

"J. W. Neblett."

The guaranty was upon a printed form, and the erasure of the printed words "Waco, McLennan" and interlineation "Stephenville, Erath" shown therein were made by J. W. Neblett prior to the execution of the instrument.

The trial was before a jury, who returned findings of fact in answer to special issues submitted by the court. Those findings were as follows: (1) At the time of the execution of the guaranty, H. W. Carver represented to J. W. Neblett that the guaranty was for only $1,000. (2) J. W. Neblett was induced to sign it by reason of said representation. (3) He read the instrument before he executed and delivered it to Carver. (4) At the time of the execution and delivery

of the guaranty, both Neblett and Carver agreed and understood that it would indemnify plaintiff for not more than $1,000.

The fifth finding was adverse to the plea of the executrix that plaintiff agreed to discharge J. W. Neblett from his guaranty in consideration for the transfer to it of notes and accounts of Frank Neblett, and the effect of other findings was that the market value of uncollected notes and accounts, held by plaintiff as collateral security of Frank Neblett's debts, was 44 per cent. of their face; that plaintiff had collected on such collateral the sum of $1,354.07, and the reasonable expense of such collection was 20 per cent. of their face.

Frank Neblett was introduced as a witness by the executrix, and his testimony directly and positively supported the pleas of the executrix of fraudulent misrepresentations by Carver inducing the execution of the guaranty, and also the other special pleas sustained by the jury in the second and fourth findings; in fact, his testimony was the only testimony offered to sustain those defenses, except the fact that the guaranty of future indebtedness of Frank Neblett was in fine print, and was overlooked by plaintiff's counsel in drawing the original petition in this suit, wherein he only sued for $1,000, and the substantial admission by plaintiff's president, Milam, according to the testimony of Frank Neblett, that $1,000 was the extent of J. W. Neblett's liability.

Plaintiff urged several objections to the introduction of that testimony of Frank Neblett, and the action of the court in overruling them is made the basis of several assignments of error.

[1] One of the grounds of objection was that Frank Neblett was not a competent witness, in that he had been convicted of a felony, and had served a term in the penitentiary; and, in connection with that objection, plaintiff offered a certified copy of an indictment filed in the United States District Court for the Northern District of Texas, on November 8, 1905, charging Frank Neblett on June 10, 1905, with unlawfully engaging in and carrying on the business of a retail liquor dealer without having paid the special tax therefor as required by the federal statutes; also a judgment of that court upon a verdict of a jury dated November 23, 1905, convicting Frank Neblett of that offense; also a judgment of the same court of date November 24, 1905, sentencing Frank Neblett, as a punishment for that offense, at imprisonment at hard labor in the United States Penitentiary at Atlanta, Ga., for the period of one year and one day, and at a fine of $100 in addition thereto; also the certificate of the clerk of that court to the effect that no writ of error was ever prosecuted from that judgment and sentence.

The plaintiff's objection to the competen-cy of the witness was based upon that judgment of conviction and sentence, the contention being that the same rendered the witness infamous. Texas Penal Code, art. 55, reads:

"Every offense * * * punishable by death or by imprisonment in the penitentiary, either absolutely or as an alternative, is a felony."

In Webster v. Mann, 56 Tex. 123, 42 Am. Rep. 688, it was held that a conviction for forgery rendered the defendant incompetent as a witness. In so deciding the court used the following language:

"The offense of forgery is one which at common law was held to render the person guilty thereof infamous, and hence incompetent to testify. 1 Greenleaf on Ev. 373."

In Greenleaf, Ev. § 373, the following is said:

"It is a point of no small difficulty to determine precisely the crimes which render the perpetrator thus infamous. The rule is justly stated to require that 'the publicum judicium must be upon an offense implying such a dereliction of moral principle as carries with it a conclusion of a total disregard to the obligation of an oath.' But the difficulty lies in the specification of those offenses. The usual and more general enumeration is treason, felony, and the crimen falsi."

Following that announcement, and after referring to numerous decisions upon the subject, the author concludes the same paragraph of his work with the following:

"And from these decisions it may be deduced that the crimen falsi of the common law not only involves the charge of falsehood, but also is one which may injuriously affect the administration of justice by the introduction of falsehood and fraud. At least it may be said, in the language of Sir William Scott, 'so far the law has gone, affirmatively; and it is not for me to say where it should stop, negatively.'"

Prof. Wigmore in his Treatise on Evidence, vol. 1, § 519, after giving the history and general policy of the rule of evidence which renders a person incompetent as a witness if he has been convicted of an infamous crime, and reviewing the early decisions thereon, uses the following language:

"Hence, as soon as the rule begins to be reasoned about, we find it placed upon the more plausible theory of actual moral turpitude, i. e., the person is to be excluded because from such a moral nature it is useless to expect the truth—a notion which at least avoided the fallacy of the punishment theory, and came finally to be put forward as the orthodox one of the common law."

In support of that announcement, he cites Chief Baron Gilbert, Ev. 139; Mr. Thomas Starkie, Ev. 83; Chief Justice Swift, Ev. 52. Continuing, the same author contends that there can be no justification for the disqualification of a witness by reason of conviction of crime, and cites in support of that announcement the reasoning of Mr. Jeremy Bentham in his "Rationale of Judicial Evidence." And he adds that legislation recently enacted has in most jurisdictions abolished the common-law rule.

Appellant has cited many decisions to sustain the objection, such as Mackin v. Gal-

lagher, 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909; Cooley's Const. Law, 29; Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89; U. S. v. Johannesen (C. C.) 35 Fed. 411; Cain v. State, 18 Tex. 387.

In the federal decisions cited it was held that crimes punishable by imprisonment in the penitentiary are infamous crimes, but the question involved in each of those decisions was not a question of the incompetency of witnesses to testify, but whether or not a prosecution would lie for the crime alleged; and in each case the rule is announced that whether or not a crime is infamous, requiring an indictment as a predicate for a prosecution therefor, will be determined by the nature of the punishment inflicted, rather than by the nature of the offense; and that, as confinement in the penitentiary is an infamous punishment, prosecutions for all offenses so punished must be based on indictments by a grand jury, in view of article 5 of the amendments to the federal Constitution, which provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in active service in time of war or public danger."

In Butler v. Wentworth, by the Supreme Court of Maine, reported in 84 Me. 25, 24 Atl. 456, 17 L. R. A. 764, there is an interesting discussion of the federal decisions, in which it is pointed out that according to the earlier of those decisions, rendered before the adoption of that amendment of the Constitution, the nature of the crime as understood at common law, rather than the punishment inflicted determined whether or not the crime was infamous; and, if the character of the crime charged was not infamous in its character, the prosecution for its commission did not require an indictment, but that, according to later decisions rendered after the adoption of the constitutional amendment noted above, an indictment was necessary if the punishment for the crime was infamous.

In the absence of any statute in this state changing the common-law rule for the trial of civil cases, we have reached the conclusion that the conviction of Frank Neblett, mentioned already, was not a conviction for an infamous crime, within the meaning of the common law, since that crime did not involve such moral turpitude as necessarily to render the witness unworthy of belief in a court of justice.

[2] And as the witness was not incompetent, his former conviction was not admissible to impeach his testimony, as insisted by appellant in another assignment of error. Abilene & So. Ry. v. Burleson, 157 S. W. 1177, and authorities there cited, including, among others, M. K. & T. Ry. v. Creason,

101 Tex. 335, 107 S. W. 527. In the case last mentioned the following is said:

"At an early date in the history of this court it was settled that 'in the impeachment of a witness the inquiry should be confined to his general reputation for truth, and that it should not extend to his general moral character.' Boon v. Weathered, 23 Tex. 675; Ayres v. Duprey, 27 Tex. 594, 86 Am. Dec. 657; Kennedy v. Upshaw, 66 Tex. 452 [1 S. W. 308]."

It is true, as contended by appellant, that in Ry. v. Creason, supra, and in Ry. v. Burleson, supra, the record of conviction of the witness was not offered, but the offer was to show by the witness, on cross-examination, that he had been previously indicted for an offense. Appellant insists that the only method of such impeachment under the common-law rule would have been proof of a conviction, and that therefore those decisions were correct, because such proof was not offered. However, the decisions are not predicated upon that distinction, but upon the general rule, as announced in the quotation from our Supreme Court, that the only method of impeachment of a witness is by proof that his general reputation for truth and veracity is bad.

[3] But we are of the opinion that another objection to the testimony of Frank Neblett should have been sustained. The record shows that the witness was made a beneficiary of his father's estate by the latter's will, that the interest so bequeathed to him was worth $12,000 or $15,000, and that the executrix of the will is his mother. On the former appeal of this case we held, under the provisions of article 3690, Vernon's Sayles' Tex. Civ. Stats., that Frank Neblett was precluded from testifying to the transactions between plaintiff's agent, H. W. Carver, and J. W. Neblett relative to the execution of the written guaranty by the latter, and upon which testimony the findings of the jury in answer to issues 1, 2, and 4 were chiefly predicated. As said in our former opinion, Frank Neblett was a party defendant in interest with his mother in the suit against her as executrix, since any judgment rendered against her would be binding upon his interest in the estate also, and therefore his testimony was precluded by the statute.

The trial court admitted the testimony on the last trial by reason of the fact that it was shown that, after our former decision, Frank Neblett had executed to his mother a written transfer of all his interest in the estate, and thus removed the statutory exclusion of his testimony, as against the objection now under discussion. But it was further shown by the testimony of Frank Neblett himself that the deed of conveyance to his mother had never been recorded; that the only consideration recited therein was the payment of $1; that his mother had paid that amount to him at his own suggestion; and that the only purpose of the deed was to render him competent as a witness upon the last trial of the case. In answer

to the further question whether or not his interest in the estate would be reconveyed to him after the trial of the suit, he said that he did not know whether that would be done or not. He further testified that he knew that under the law it was necessary for him to transfer his interest in the estate in order to enable him to testify, and that the transfer was executed by him at his own suggestion. It cannot be seriously questioned that in order to remove the statutory inhibition of his testimony it was necessary that such a transfer should have been made in good faith, and that, if the transfer was a mere camouflage or pretext for the purpose of avoiding the force of the statute, it could not have that effect. Under the testimony of Frank Neblett himself, referred to, it is clear that the transfer of his interest to his mother was not in good faith, but a subterfuge only, and executed for the sole purpose of evading the force of the statute. Under such circumstances the transfer could not render his testimony admissible, and the court erred in overruling appellant's objection to such testimony based upon that statute. General Bonding & Casualty Ins. Co. v. McCurdy, 183 S. W. 799; 40 Cyc. 2292, and decisions there cited; Buck v. Haynes, 75 Mich. 397, 42 N. W. 949; De Roux v. Girard (C. C.) 90 Fed. 537.

[4, 5] We are of the opinion that there was no error shown in admitting the testimony of Charles Neblett to the effect that Mr. Milam, the president of the plaintiff company, admitted, in substance, that his company had only sued for $1,000 originally, and that that amount was the full amount of the guaranty. Nor do we think there was any error in admitting in evidence a copy of plaintiff's original petition, in which only $1,000 was claimed as due upon the guaranty. While the explanation offered by appellant that the petition and the statement of Milam, testified to by Charles Neblett, were all under the erroneous impression that the guaranty was limited to $1,000, still such explanation would not be so conclusive as to exclude such testimony, and render it any the less in the nature of an admission against interest and admissible for that purpose. The printing of the guaranty was in small letters, and one of the theories advanced by the executrix was that that portion of the guaranty relating to future debts was overlooked by both Carver and J. W. Neblett, and, to substantiate that contention, the evidence last referred to was offered to show that, as plaintiff's attorney and president had both overlooked that part of the guaranty, it was reasonably probable that Carver and J. W. Neblett made the same mistake.

[6] We overrule appellant's assignment to the effect that special issue No. 4, submitted to the jury, is a repetition of issue No. 1.

[7] Appellant insists that, as the jury found in answer to issue No. 3 that J. W.

Neblett read the instrument of guaranty before he signed it, he was bound thereby at all events, and that the findings of the jury upon issues 1, 2, and 4 were therefore immaterial; in other words, that if he read the instrument, which is plain and unambiguous in its terms, he could not be heard to say thereafter that he was misled by Carver into believing that his liability thereon was limited to the sum of $1,000.

If, as found by the jury in answer to issue 4, Neblett and Carver, at the time of the execution and delivery of the guaranty, both orally agreed and understood that the guaranty was for not more than $1,000, and if the instrument was executed and delivered under the mistaken belief and with the intention that such should be and was its legal effect, and the instrument was executed and accepted under the mistaken belief that such was its legal effect, then a court of equity would so reform the instrument as to give it that effect. 1 Black on Rescission and Cancellation, § 149; also Kelley v. Ward, 58 S. W. 207; Zieschang v. Helmke, 84 S. W. 436.

In addition to the findings by the jury mentioned above, the trial judge filed findings of other facts and conclusions of law, in part as follows:

"I find as a fact from the undisputed evidence of this case that J. W. Neblett guaranteed only to pay the debt of Frank Neblett to the Cooper Grocery Company, with ten per cent. interest thereon, and ten per cent. attorney's fees, at Stephenville, Texas.

"I find as a further fact that the notes and indebtedness sued on in this case by the Cooper Grocery Company, by agreement between it and Frank Neblett, and to which agreement J. W Neblett, the guarantor, did not assent, are payable at Waco, Texas, and draw 10 per cent. compound interest.

"I conclude as a matter of law from the foregoing facts that by agreement between the Cooper Grocery Company and Frank Neblett, made without the consent of the said J. W. Neblett, the contract of indebtedness, which Grocery Company, in behalf of Frank Neblett, has been materially altered, and that the said J. W. Neblett has been thereby released from any liability on his written guaranty."

Error has been assigned to those findings of fact and that conclusion of law.

The notes upon which the suit was instituted were executed by Frank Neblett subsequently to the date of the instrument of guaranty, each stipulating for the payment of interest annually on the principal from date until paid at the rate of 10 per cent. per annum, and for 10 per cent. additional for collection fees if sued on or placed in the hands of an attorney for collection. Each note is made payable at Waco, Tex., and further stipulates that past-due interest shall draw interest at the rate of 10 per cent. per annum. Plaintiff alleged in its petition that the notes were all executed by Frank Neblett in settlement of accounts for goods sold to him by plaintiff. The contention is made that authority to make the notes payable at Waco instead of at Stephen-

ville, and to stipulate that past-due interest shall draw interest at the rate of 10 per cent. instead of the legal rate of 6 per cent., which would obtain in the absence of that stipulation, was within the contemplation of the parties to the contract of guaranty, and, in the alternative, that, at all events, such changes in the original implied contracts of indebtedness of Frank Neblett on open accounts were not so material as to work a release of the guarantor.

[8] We think it clear that a change in any contract of indebtedness, increasing the rate of interest from 6 per cent. to 10 per cent. per annum, is a material change. The stipulation in the notes sued on that they should be paid in Waco, McLennan county, gave the payee the right to sue on them in that county, even though the maker's residence at the time of suit might be in another county, which would be the venue of the suit in the absence of that stipulation. As is often said, the right to be sued in the county of one's residence is a valuable right. Plaintiff could not have sued Frank Neblett upon the accounts he owed in any county other than that of his residence, and the stipulation in the notes taken to cover those accounts that they were payable in McLennan county was likewise a material change in his contracts of indebtedness. In Lawrence v. McCalmont, 2 How. 426, 11 L. Ed. 335, the Supreme Court of the United States, speaking through Justice Story, in construing a contract of guaranty said:

"We have no difficulty whatsoever in saying that instruments of this sort ought to receive a liberal interpretation. By a liberal interpretation, we do not mean that the words should be forced out of their natural meaning, but simply that the words should receive a fair and reasonable interpretation, so as to attain the objects for which the instrument is designed and the purposes to which it is applied."

Many authorities might be added announcing the same rule of construction, including Gardner v. Watson, 76 Tex. 25, 13 S. W. 39, by our own Supreme Court. But it is equally as well settled that a guarantor cannot be held beyond the strict terms of his contract, and that any material change in the obligation guaranteed will release him. 12 R. C. L. 1083, and authorities there cited; Gardner v. Watson, 76 Tex. 25, 13 S. W. 39, supra; Stafford v. Christian, 101 S. W. 876; 20 Cyc. 1436.

Hence we sustain the findings of fact by the trial judge, and his conclusion based thereon, that those changes in the contracts of indebtedness which were covered by the contract of guaranty, and were without the consent of the guarantor, operated as a discharge of the guarantor from liability therefor irrespective of the findings by the jury on other issues.

[9] In this connection, however, we will add that there was error in the admission of the testimony of Charles Neblett to prove that J. W. Neblett had incurred traveling expenses and the expense of employing an attorney to procure a change of venue of the suit from McLennan county, since those facts were in no manner material to the issue of the scope of the guaranty, which was in writing and unambiguous in its terms.

[10, 11] We are of the opinion that the fact that plaintiff's counsel, in drafting the original petition, through mistake in reading the contract of guaranty, supposed that the guarantor was bound only for past indebtedness of Frank Neblett, not to exceed the sum of $1,000, and drew the petition in accordance with that interpretation, coupled with the further fact, as testified by Charles Neblett, that Mr. Milam gave the same interpretation of the instrument, would not, without the aid of other evidence, be sufficient to support the findings of the jury upon the issues of misrepresentations by Carver inducing the execution of the guaranty, and the execution of it through mutual mistake of himself and the guarantor as to its legal import. And aside from those circumstances, the only evidence introduced to support those defenses was the testimony of Frank Neblett, which we have held to be inadmissible.

Accordingly, but for our conclusion that there was a material change in the indebtedness guaranteed which operated to release the guarantor, we would feel it our duty to reverse the judgment of the trial court, and here render judgment in favor of the appellant for the undisputed unpaid balance of its debt against Frank Neblett, as appellant insists should have been done.

As the erroneous rulings pointed out resulted in no harm to appellant upon the issue of the discharge of the guarantor, the judgment will be affirmed by reason of such discharge, irrespective of those errors.

Affirmed.

CONNER, C. J., not sitting. Serving on Writ of Error Committee at Austin.

## On Rehearing.

DUNKLIN, J. In further support of our conclusion that the conviction and sentence of Frank Neblett was not admissible to impeach or discredit his testimony in this suit, see M., K. & T. Ry. v. De Bord, 21 Tex. Civ. App. 691, 53 S. W. 587, and decisions there cited.

CONNER, C. J., who did not sit in the original hearing, concurs in the conclusion just stated, in the further conclusion reached on original hearing, that Frank Neblett was rendered incompetent as a witness by reason of the fact that he was a party in interest in the suit adverse to appellant, and therefore was precluded from testifying by reason of article 3690, Vernon's Sayles' Tex. Civ. Stats., as announced in the original opinion rendered.

Upon the further question whether or not, under the common-law rules of evidence, the

conviction and punishment of Frank Neblett rendered him infamous, and therefore incompetent as a witness, the Chief Justice has reached no conclusion, and therefore expresses no opinion, since the decision of that question becomes unnecessary.

But we all concur in overruling appellant's motion for rehearing.

Motion overruled.