COOPER GROCERY CO. v. EPPLER et al.
(No. 5900.)

(Court of Civil Appeals of Texas. Austin. April 10, 1918.)

1. GUARANTY ☞27 — CONTRACT — CONSTRUCTION.

The rule that a guaranty of another's account is to be strictly construed means merely that the liability of the guarantors is not to be enlarged or extended beyond the terms of their contract, and the rule itself is not to be applied until the legal effect and scope of the undertaking has been determined, a matter which must be ascertained as in any other case of contract.

2. GUARANTY ☞27 — CONTRACT — CONSTRUCTION.

The true rule as to the construction of a guaranty is to give the instrument the effect which will accord best with the intention of the parties, as manifested by the terms of the guaranty, taken in connection with the subject-matter to which it relates.

3. GUARANTY ☞36(2) — REINCORPORATION — INTENTION.

Where a mercantile company was incorporated for 10 years, and large stockholders in it guarantied payment of its accounts, the guaranty to continue until revoked by the guarantors, and, at the expiration of the 10 years, a new company was chartered, taking over the assets of the old, the guaranty cannot be limited, without regard to the intention of the parties, to the debts of the old company, though the old company was authorized to do business in two cities, while the new company's charter authorized it to transact business only in one of the two, and though the purpose clause of the old company's charter was limited to retail business, while the new company was given the privilege to do both wholesale and retail business.

4. GUARANTY ☞92(1)—INTENTION OF PARTIES —QUESTION OF FACT.

In an action on a guaranty of the accounts of a mercantile corporation, the intention of the parties as to whether the guaranty should continue as to the accounts of a new corporation which took over the assets and business of the first was a question of fact.

5. GUARANTY ☞90—ACTION—EVIDENCE—INTENTION.

In an action against stockholders in two mercantile companies, the second of which succeeded and took over the assets of the first, incorporated for 10 years, on their guaranty of the accounts of the first company, though not pleaded or relied on as a basis for plaintiff's cause of action, testimony of plaintiff's vice president and manager as to the refusal of plaintiff to extend the indebtedness unless defendants, the alleged guarantors, would consent to the extension, and letters relating to the indebtedness of the mercantile company after the procuring of the new charter, were admissible as tending to shed light on the intention of the parties as to whether the guaranty should cover the accounts of the new company, the controlling issue, and the practical construction they placed upon the contract.

Appeal from District Court, McLennan County; E. J. Clark, Judge.

Suit by the Cooper Grocery Company against W. R. Eppler and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Davis & Cocke, of Waco, for appellant. S. W. Bishop, of Gorman, for appellee W. R. Eppler. J. B. McEntire, of Gorman, for appellee Mrs. T. L. Gates.

BRADY, Special Judge. This suit was instituted by the Cooper Grocery Company, appellant, against W. R. Eppler and Mrs. T. L. Gates, administratrix of the estate of T. L. Gates, deceased, appellees, upon certain indebtedness due appellant by the Eppler Mer-

cantile Company. This indebtedness was represented by two notes, one for $883.03, dated July 1, 1914, and the other for $2,626.70, dated October 1, 1914, and also by an account for $185.86; all bearing 10 per cent. interest from date, and providing for 10 per cent. attorney's fees, but subject to credits aggregating $1,325.40. A portion of these credits were paid in the fall of 1914, before the Eppler Mercantile Company went into bankruptcy, and the remaining credits represent dividends in bankruptcy.

The appellant based its suit against appellees upon the following written guaranty:

"In consideration of the sale of any kind of merchandise by the Cooper Grocery Company to the Eppler Mercantile Company, I, we, or either of us hereby guarantee unto them and their assigns, unconditionally, the payment of any indebtedness of said the Eppler Mercantile Company now existing from the said the Eppler Mercantile Company to the said the Cooper Grocery Company, now residing and doing business in the city of Waco, county of McLennan, state of Texas, not exceeding the sum of six thousand no/100 dollars, and any indebtedness created on this day or hereafter, until notice in writing; and I, we, or either of us consent to any extension of payment made, or hereafter made, and waive notice thereof, and waive the necessity of protest, notice, and suit in all cases between said parties, and consent that the form of said indebtedness may be changed from account to note, bill, or other commercial paper; and I, we, or either of us agree to pay interest at the rate of 10 per cent. per annum from date agreed upon by said purchasers, and 10 per cent. attorney's fees if said debt is placed in the hands of an attorney for collection; and I, we, or either of us further guarantee that said indebtedness shall be paid in Waco, McLennan county, Texas, and we waive the right to be sued elsewhere.

"In testimony of which I, we, set my, our, hands at Gorman, Texas, on the 3d day of August, 1908.                    W. R. Eppler.
                                    "T. L. Gates."

In its amended petition appellant pleaded that, at the time of the execution of said guaranty by W. R. Eppler and T. L. Gates, the Eppler Mercantile Company was indebted to appellant to a considerable amount, and had continued to be so indebted up to the time of its insolvency in bankruptcy in December, 1914, when it was adjudged a bankrupt and ceased doing business; that the Eppler Mercantile Company was first organized as a Texas corporation January 9, 1900, with its corporate life limited by its charter to 10 years; that after the lapse of 10 years the stockholders decided to continue and extend the corporation for the period of 20 years, and to this end dissolved the corporation and extended the same by procuring a new charter instead of amending the old charter; that in pursuance to this plan a new corporation was organized on January 10, 1910, with a capital stock of $50,000, which capital stock, under the new charter, was made up entirely of assets of the corporation as first organized, and was paid by goods, wares, and merchandise, credits, and debits of said corporation as it existed on January 10, 1910, and that the stockholders under the new charter

were the same as the stockholders under the old, and that the new capital stock represented the holdings of the stockholders under the old charter, and the new stock was issued to them in proportion to their several holdings. Appellant further alleged that the incorporation of the Eppler Mercantile Company in January, 1910, was but an extension and continuation of the corporation as originally formed, and that such was the purpose and intention of all the parties interested therein; that appellant commenced business with the Eppler Mercantile Company after its organization in 1900, and continued to do business with it until its bankruptcy in 1914, and had no knowledge of the taking out of the new charter for such company, but sold goods to the company during that entire period under the belief that it was the same concern that it had commenced to do business with, which was well known to appellees, who were active in the management of said business under both charters; that acting upon this belief, without any notice to the contrary, and relying upon said guaranty, appellant continued to sell a large amount of goods to said corporation up to the date of its bankruptcy. These are all the material facts alleged in appellant's petition which it is deemed necessary to here state.

Appellees answered by pleading several special exceptions, which were all overruled by the trial court, and by general denial. The case was tried without a jury and judgment rendered for appellees, to which appellant excepted. Motion for new trial was filed, overruled, exception taken, and the case brought to this court for revision.

At the request of the appellant, the trial court filed findings of fact and conclusions of law as follows:

"Findings of Fact.

"(1) That the Eppler Mercantile Company first filed its application for charter, and was chartered on January 8, 1900, to do a general retail mercantile business at Gorman, Texas, and Cisco, Texas, with a paid-up capital of $10,000, and chartered for a period of ten years.

"(2) That the charter granted the Eppler Mercantile Company set out in paragraph 1 expired by operation of law on January 8, 1910, and said corporation was by operation of law that day dissolved.

"(3) That after the dissolution of the Eppler Mercantile Company as above herein described, to wit, on January 21, 1910, another corporation was chartered under the name of the Eppler Mercantile Company of Gorman, Texas, said charter providing that the life of the corporation should be for a period of twenty years, with a capital stock of $50,000; said charter providing that said corporation should do a wholesale and retail business at Gorman, Texas.

"(4) That said corporation chartered on January 21, 1910, became a bankrupt in the year 1914, and at the time of said bankruptcy it was indebted to the Cooper Grocery Company in the sum as alleged by plaintiff.

"(5) That all debts created by or owing by the Eppler Mercantile Company charter January 8, 1900, to the Cooper Grocery Company had been fully paid and satisfied prior to the date of the filing of this suit.

"(6) That the Cooper Grocery Company and W. R. Eppler and T. L. Gates on the 3d day of August, 1908, entered into a written contract as follows: [Being the guaranty set out in the foregoing statement.]

"(7) That the effect of the contract set out in paragraph No. 6 was a guarantee upon the part of T. L. Gates and W. R. Eppler guaranteeing the debts of the corporation the Eppler Mercantile Company which was chartered on January 8, 1900, and was dissolved by operation of law, January 8, 1910.

"(8) That the Cooper Grocery Company, plaintiff, had knowledge, through its representatives, of the organization of the Eppler Mercantile Company of Gorman, Texas, incorporated January 21, 1910, and the dissolution of the Eppler Mercantile Company incorporated January 8, 1900, and dissolved January 8, 1910.

"(9) That T. L. Gates died in the spring of 1914, and that Mary J. Gates, his surviving wife, subsequently, and in the year 1914, duly qualified as community administratrix upon the estate of the said T. L. Gates and herself.

"(10) That the indebtedness herein sued upon was made by the Eppler Mercantile Company, which was chartered January 21, 1910, and was owing to it by the Cooper Grocery Company at the date of its bankruptcy.

"(11) That all of the assets owned and belonging to the Eppler Mercantile Company which was chartered January 8, 1900, and was dissolved January 8, 1910, and prior to its dissolution, was conveyed to T. L. Gates, trustee. And after the organization of the new Eppler Mercantile Company of Gorman, Texas, chartered January 21, 1910, T. L. Gates transferred the assets that had been transferred to him to the new corporation the Eppler Mercantile Company, and said assets constituted the assets of the new corporation incorporated January 21, 1910. And that the stockholders in said new corporation were the same as the stockholders in the old corporation at the date of its dissolution, and that stock in said new corporation were issued to stockholders of the dissolved corporation in proportion to their holdings in said old corporation dissolved, and that the interval between the dissolution of the old corporation on January 8, 1910, and the organization of new corporation on January 21, the business was continuous, but during said interval the business was actually operated through T. L. Gates.

"(12) That the Eppler Mercantile Company of Gorman, Texas, chartered 1910, was not a continuation of the corporation the Eppler Mercantile Company which was chartered January 8, 1900, and was dissolved January 8, 1910, but that said corporation chartered January 21 was a new corporation, incorporated with a different capital stock, for a different period of time and for different purposes, and that the plaintiff, the Cooper Grocery Company, had notice of these facts.

"Conclusions of Law.

"Applicable to the foregoing findings of fact the court submits the following conclusions of law:

"(1) That a contract of guaranty, as set out in the findings of fact, must be strictly construed.

"(2) That the guaranty, as set out in the findings of fact, and upon which the defendants are sued, cannot operate to bind the defendants, or either of them, for the payment of the debts of the Eppler Mercantile Company of Gorman, Texas, chartered January 21, 1910, for the reason that said guaranty was executed for the purpose of guaranteeing the debts of another and different corporation, to wit, the Eppler Mercantile Company, as chartered January 8, 1900, and dissolved by operation of law January 8, 1910, and for that reason the defendants, or either of them, are not bound or obligated to the plaintiff in any sum whatsoever."

We adopt the trial court's findings of fact with the exception of the seventh and twelfth findings, which we regard as substantially conclusions of law and not of fact.

Appellant's first, second, and third assignments of error, and the propositions thereunder, substantially raise the question and present the proposition that the Eppler Mercantile Company incorporated January, 1910, merely extended and continued the old corporation chartered in 1900, instead of creating a new and independent corporation, having no legal relation to the old; and that therefore, the guaranty of appellees, as a matter of law, applied to the indebtedness of the Eppler Mercantile Company incorporated January, 1910, and sued upon in this case. This proposition is earnestly denied by appellees, and is at direct variance with the conclusion reached by the trial court, as shown in the conclusions of law copied in the foregoing statement. While there is much respectable authority upholding this contention of appellant, yet, in the view we have taken of this case, we deem it unnecessary to decide this interesting and more or less perplexing question. It is our opinion that, whether the corporation last chartered be regarded in strict legal effect as a new corporation distinct from the old, or merely an extension and continuation thereof, the proper disposition of this case depends upon the intention of the parties as to the legal effect and scope of the guaranty in question.

[1] The trial court, in the conclusions of law, announced the rule that a contract of guaranty, such as set out in the findings of fact, must be strictly construed, and concluded that the guaranty sued upon, as a matter of law, was limited in its application to the debts of the Eppler Mercantile Company chartered January 8, 1900, and dissolved by operation of law January 8, 1910, and did not extend to the debts of the corporation chartered January, 1910. While the rule is sometimes stated that such a guaranty is to be strictly construed, this means nothing more than that the liability of the guarantors is not to be enlarged or extended beyond the terms of the contract they have made. Besides, the rule itself is not to be applied until the legal effect and scope of the undertaking has been determined, and this must be ascertained as in any other case of contract.

[2] The true rule, we think, is announced in 20 Cyc. p. 1439:

"The rule of construction having the support of the weight of authority is to give the instrument that effect which will best accord with the intention of the parties, as manifested by the terms of the guaranty, taken in connection with the subject-matter to which it relates."

As expressed by Justice Stayton in Tobler v. Willis, 59 Tex. 81:

"It is true that a guarantor is entitled to stand upon the terms of his contract, for it is

the only source of his liability. Contracts of guaranty, however, are to be construed as are other contracts; the object in all cases being to ascertain the real intention of the parties."

In Gardner v. Watson, 76 Tex. 29, 13 S. W. 40, Justice Gaines said:

"There is no special rule by which we can determine whether a contract of guaranty is a continuing one or not. Guaranties, like other contracts, must be construed so as to give effect to the intention of the parties, and, if upon their face the intention be doubtful, resort may be had to parol evidence of the situation and surroundings of the parties in order to solve the difficulty."

To the same effect is Smith v. Montgomery, 3 Tex. 204.

[3, 4] From these authorities it is manifest that the scope and effect of the guaranty here involved, especially its application to the debts of the Eppler Mercantile Company, after the taking out of a new charter in 1910, must rest upon the intention of the parties. This guaranty was admittedly a continuing one, limited as to amount, but unlimited as to time, and with the privilege expressly reserved to the grantors to recall it at any time upon written notice. By the terms of the instrument, the guarantee is described as the Cooper Mercantile Company, and the principal debtor for whom the guarantors stood good as the Eppler Mercantile Company, and it is nowhere expressly stated therein that the guaranty is limited to the debts of the corporation chartered in January, 1900, or to the life of said corporation, as prescribed in the charter. Fairly construed, in the light of the situation and the relation of the parties, the subject-matter of the contract, and the course of dealing, as hereinafter indicated, we think the guaranty in question might well be held to be a contract guaranteeing the indebtedness of the Eppler Mercantile Company, as the business concern known by that name, until revoked by the guarantors, regardless of the mere form of corporate change, and the legal fiction of a separate, artificial entity, at least until shown that the parties intended the instrument to have the more limited effect. It would be paying too much regard to form and too little to substance to hold, as a matter of law, as did the trial court, that this guaranty must be restricted to the debts of the Eppler Mercantile Company, incorporated January, 1900, and terminated with its dissolution, without reference to the intention of the parties. It is shown by the trial court's conclusions of fact, or by the facts in the record, or both, that appellees were large stockholders in the corporation, both under the old and new charter, and that they were active in the business. Appellees were active in the reorganization of the company, and were named as directors in the new charter; and the stock subscribed in the new company by T. L. Gates and W. R. Eppler amounted to considerably more than half the entire new capital stock. The record further shows that W. R. Eppler was president, and T. L. Gates

secretary and treasurer, of the Eppler Mercantile Company at the time of the dissolution, and that thereafter T. L. Gates was president and manager of the company under the new charter.

The business was run on in the same old way after the new charter was procured, and was never closed between the interval of the dissolution of the old company and the chartering of the new, and the store was managed just as before. The new company took over all the assets of the old company. It is an undisputed fact that the new company was chartered because the term of the corporation was about to expire, or had just expired, under the old charter, and no new capital seems to have been contributed to the new company. The Eppler Mercantile Company continued to do business with appellant after the taking out of a new charter just as before, and there seems to be little dispute that appellant relied upon its guaranty after the organization of the new company, and when the indebtedness sued upon arose, and that appellees never undertook to give appellant notice in writing of their purpose or desire to terminate the guaranty.

Under these circumstances, we think it clear that the guaranty cannot be limited, without regard to the intention of the parties, to the debts of the old Eppler Mercantile Company. For these reasons, we think the trial court erred in so concluding, and that the judgment must be reversed, especially in view of the error committed by the trial court, in our opinion, in excluding certain testimony hereinafter indicated.

We are not unmindful that the trial court found that the old company was authorized to do business at Gorman and Cisco, Tex., while the new company's charter only authorized it to transact business at Gorman; also that the old company's purpose clause was limited to the retail business, while the new company was granted the privilege of doing both wholesale and retail business. These findings are supported by the evidence. But we do not think these considerations weigh sufficiently to require us to construe the contract as applicable alone to the debts of the old corporation. As we have said, the instrument admits of the construction that the parties intended the guaranty should cover the debts and guarantee the credit of the business known as the Eppler Mercantile Company, as a mercantile establishment and business concern, without regard to its mere corporate form or its status as an artificial creature of the law. Therefore the intention of the parties will prevail over the mere changes in corporate organization or form, if such was their intention, and that is a question of fact to be determined upon another trial.

We do not feel inclined, however, to reverse and render this case for appellant, because we cannot say that all the facts were elicited below bearing upon the intention of the par-

ties as to the effect, operation, and application of the guaranty; and, further, because the trial court made no express finding of his conclusions upon what the parties intended. Since we have held that this contract may be well construed as intended to apply to the debts incurred by the Eppler Mercantile Company to the Cooper Grocery Company, in the business and as the business concern operated by that name, and not necessarily confined to the corporation chartered January, 1900, and limited to the term named in its charter, we think full opportunity should be given to develop this case so as to show what the parties intended. The situation and relation of the parties, the object of the guaranty and course of business dealings, and the practical construction of the parties are prime elements in the criterion of intent which must finally determine this case. Therefore the case will be reversed and remanded for further proceedings consistent with the views herein expressed.

[5] Appellant complains of the alleged error by the trial court in refusing to permit the witness J. R. Milam, vice president and manager of appellant, to testify to the refusal of the appellant to extend the indebtedness of the Eppler Mercantile Company to appellant, unless appellees, the guarantors, would consent to the extension; and also because of the exclusion of certain letters which it is claimed tended, under the circumstances, to show the intention of the parties, and the practical construction of appellees that their guaranty continued to protect the debts of the Eppler Mercantile Company to appellant. These questions are presented by the fourth, fifth, sixth, and seventh assignments of error. This testimony and these letters relate to the indebtedness of the Eppler Mercantile Company after the procuring of the new charter, and, while they are not pleaded or relied upon as a basis for appellant's cause of action, we think the testimony was admissible, and was improperly excluded. Such testimony, at least, tends to shed light upon the intention of the parties, their common understanding, and the practical construction that they placed upon the contract in its operation. In view of another trial of the case, however, we suggest the record indicates that a stronger predicate for the introduction of secondary evidence might be laid, although we are of the opinion that the failure to produce original testimony was sufficiently accounted for by appellant.

For the reasons above indicated, the judgment is reversed, and the cause remanded for trial in accordance with the views expressed in this opinion.

Reversed and remanded.

Associate Justice JENKINS, being disqualified, did not sit in this case, and Hon. JOHN W. BRADY was appointed and acted in his stead.