First National Bank of Hawarden, Appellant, v. W. I. Bran-
agan et al., Appellees.

CONTRACTS:   Construction—Extrinsic Circumstances.   A written con-
tract which is equally subject to two contradictory constructions
should be construed in the light of the correspondence between the
parties preceding the execution of the contract and reflecting the
situation of the parties as regards the subject-matter of the con-
tract.   This is especially true when the correspondence is in har-
mony with the mutual construction placed on the contract by the
parties.   So held as to a contract guaranteeing payment of discount
paper.

*Appeal from Palo Alto District Court.*—N. J. Lee, Judge.

May 13, 1924.

Rehearing Denied September 20, 1924.

Action at law, upon a written contract of guaranty.   The
dispute between the parties is one of construction of the contract
sued on.   Parol evidence was introduced by the plaintiff, to
show the circumstances surrounding the parties at the time the
contract was made, and like evidence of subsequent conduct, to
show the practical construction adopted by both parties.   At the
close of the evidence, the trial court struck from the record all
such evidence, and, adopting the construction contended for by
the defendants, directed a verdict in their favor.   The plaintiff
has appealed.—*Reversed and remanded.*

*W. S. Randall, Davidson & Burt,* and *Kelleher & Mitchell,*
for appellant.

*E. A. & W. H. Morling,* for appellees.

Faville, J.—The contract of guaranty sued upon will be
presently set forth.   It was duly signed by the directors of the
Emmetsburg National Bank, in furtherance of a plan promul-

gated by the officials of the respective banks for an exchange of discounts, whereby the discounts transferred were to be personally guaranteed respectively by the directors of the transferring bank.

The contract of guaranty was preceded by considerable correspondence between Wilson, as president of the Emmetsburg Bank, and Coffman, as cashier of the Hawarden Bank. This correspondence is a full disclosure of the mutual purpose and intent of the parties and of the circumstances out of which the contract of guaranty arose. Such correspondence also constitutes all the prior negotiations had. It appears therefrom that the Emmetsburg Bank was carrying a large amount of excess loans, and was under criticism from the banking department for that reason, and under peremptory instruction to reduce the same. What is meant by an "excess loan" is a loan to any patron, however responsible, in excess of the legal limit of 10 per cent of the bank's capital and surplus. This legal limit for the Emmetsburg Bank was $7,000. This problem of "excess loans" to responsible patrons is a prevalent problem in the experience of many, if not all, banks. The method of its solution often, if not usually, adopted is to transfer the "excess" to some other bank. In order to be effective as a compliance with the law, such transfer must be "without recourse." It is obvious from the record in this case that the officers of both of these banks, as well as the bank examiners, proceeded upon the theory and belief that it was the law that, if such "excess" should be rediscounted by ordinary indorsement, the liability of the transferring bank as an indorser would still remain, and that such rediscount would still be an excess loan to the borrower. Whether or not these parties were correct in this interpretation of the law is not before us, and we are not called upon to decide the question of whether or not an excess loan so rediscounted is to be taken into consideration in determining the amount that can be loaned to a customer after his paper has been so rediscounted. We make no pronouncement whatever as to the law on this question. We state the situation as we find it to be from the record and as it was regarded and acted upon by the parties. Under the circumstances disclosed in the record,

and with the parties acting as they did, and in their belief, it is manifest that neither bank would purchase the discounts of the other "without recourse" unless some other form of guaranty was provided.

The Hawarden Bank also had "excess loans" which it needed to place with other banks, in order to conform to the law. The antecedent correspondence between these two banks was upon this subject, and amounted to a mutual arrangement whereby each would accept paper from the other, the same to be personally guaranteed by the directors of the transferring bank. Pursuant to this correspondence, the Hawarden Bank sent to the Emmetsburg Bank certain of its paper and a written guaranty, signed by its directors. Thereupon the Emmetsburg Bank sent an *identical* written guaranty, signed by its directors, to the Hawarden Bank, and likewise sent some of its paper. All the paper thus sent by the respective banks to each other purported to be transferred "without recourse." This mutual transferring of paper continued until the closing of the Emmetsburg Bank, in March, 1921. At that time, the plaintiff bank held, of the paper thus transferred to it by the Emmetsburg Bank, notes by insolvent makers amounting to more than $20,000. These notes furnish the basis upon which they seek to recover from the defendants on their contract of guaranty. The defense is that the contract of guaranty does not by its terms create any liability on the part of the defendants for such notes, in that such notes were all transferred "without recourse."

The argument is, in brief, that the grantors guaranteed only to pay *indebtedness due from the Emmetsburg Bank* to the plaintiff, and that, inasmuch as the bank owed nothing under its indorsement, its guarantors likewise owed nothing. This brings us to the vital dispute, which is as to the construction of the contract.

The construction presented by the defendants is that the contract held them to a payment only of sums of money "owing to you by Emmetsburg National Bank."

Such construction may be illustrated by setting forth a literal copy of the contract, and indicating thereon by numerals

the two grounds of liability upon which the obligation of the defendants is predicated, as claimed by them, as follows:

"Emmetsburg, Iowa, Jan. 22, 1920.
"To First National Bank,
"Hawarden, Iowa.

"In consideration of one dollar and other valuable consideration the receipt whereof is hereby acknowledged we and each of us jointly and severally, hereby guarantee to you, your successors and assigns, the full and prompt payment at maturity to you, your successors and "assigns, of any and all sums of money that may now or at any time hereafter be owing to you *by Emmetsburg National Bank of Emmetsburg, Iowa,* (1) *on* the note or notes of said bank executed by it to you; and (2) *upon* notes, bills receivable, drafts, acceptances, checks and other evidences of indebtedness which you may at any time hereafter discount or cash for said bank and which may come into your possession by purchase or otherwise."

The construction contended for by the plaintiff may be illustrated in the same way, as follows:

"Emmetsburg, Iowa, Jan. 22, 1920.
"To First National Bank,
"Hawarden, Iowa.

"In consideration of one dollar and other valuable consideration the receipt whereof is hereby acknowledged we and each of us jointly and severally, hereby guarantee to you, your successors and assigns, the full and prompt payment at maturity to you, your successors and assigns, of any and *all sums of money that may now or at any time hereafter be owing to you* (1) *by* Emmetsburg National Bank of Emmetsburg, Iowa, on the note or notes of said bank executed by it to you and (2) *upon* notes, bills receivable, drafts, acceptances, checks and other evidences of indebtedness which you may at any time hereafter discount or cash for said bank and which may come into your possession by purchase or otherwise."

In both illustrations, the parenthetical figures are ours; likewise, the italics.

It will be noted from the foregoing that the contract as written may technically bear either construction. It will be noted also that the second numeral used by us falls into the same place, under both constructions. The proper location of the first numeral is the disputed question. Which construction shall be deemed to express the true intent of the parties? It is well settled that, for the purpose of such construction, the court will and should look into the circumstances surrounding the parties, and will stand in their shoes for the moment, and therefrom will look to the general mutual purpose and intent of the parties in entering into such contract. This is not done for the purpose of overriding the contract or any part thereof. Its sole purpose is to discover the proper interpretation of the terms of the contract, as therein set forth. The evidence of the antecedent correspondence was properly received, for that purpose alone. It was the duty of the court to construe the terms of the contract in the light thereof, though it was not permissible to the court to contradict or vary such terms of the contract. The respective interpretations of the contract contended for by the parties do not involve any contradiction or variation of the literal terms of the contract, though the two interpretations contended for do contradict each other. The construction contended for by the defendants would be subversive of the general purpose of the parties in entering into the contract, as indicated by the antecedent and contemporaneous correspondence, in that it would reduce the contract of guaranty to an absolute nullity. It would render the guaranty wholly ineffective, and without any application to the transactions actually had between the two banks. The Emmetsburg Bank never did owe the Hawarden Bank any sum on any note or notes ''executed by it;'' nor was it contemplated that the Emmetsburg Bank should become liable upon its indorsement of notes transferred by it; nor did it ever make any such indorsement, except without recourse. To have indorsed the notes would have rendered the whole plan ineffective. Its very purpose was to relieve the Emmetsburg Bank of that liability, and thereby to bring it within the requirements of the law. Such was the very contingency which called for

the personal guaranty of the directors, to take the place of the liability of the bank as an indorser.

It is argued for the defendants that the construction contended for by them accords with the literal terms of the writing, and that such terms may not be varied by parol evidence or by extraneous evidence of surrounding circumstances.   Sufficient to say that such construction is no more literal than that contended for by the plaintiff.   The plaintiff does not contend for any change in the terms of the contract, nor for any other meaning than that which is naturally imported by the terms used.

It is further argued by the defendants that, if they be held liable upon their guaranty ''upon notes'' indorsed to the plaintiff ''without recourse,'' they, as guarantors, are wholly deprived of any recourse to their principal.   If this argument were otherwise sound, it is predicated, nevertheless, upon a mistaken legal conception.   Upon this record, these defendants were makers of accommodation paper, for the accommodation of the Emmetsburg Bank.   The liability of the bank, as accommodated party, to the defendants, as the accommodating party, arose out of that relation, and was wholly unaffected by its method of indorsing its paper, whether with or ''without recourse.''   The general law is that an accommodation maker, having paid his obligation, may recover from the accommodated party, as on an implied contract of reimbursement.   He is deemed to stand in the relation of a surety to his principal.   See authorities collated in 8 Corpus Juris 269 to 272.

By the foregoing, we do not presume to say that the defendants have any right of action against the Emmetsburg Bank.   Such question is not before us.   Under the exigencies of the law, they may have waived that very right; but they have not lost it by reason of the mere fact that the Emmetsburg Bank indorséd its paper to the plaintiff ''without recourse.''

It is also suggested by appellees that some of the paper transferred by the Emmetsburg Bank to the plaintiff did not constitute excess loans.   But the contract of guaranty by its express terms was made to apply to all paper thereafter discounted by the plaintiff for the Emmetsburg Bank.   The plaintiff, therefore, was under no burden of inquiry as to

whether the paper received by it from the Emmetsburg Bank actually represented excess loans or not. The fact still remains apparent that the prime objective of the arrangement was to care for excess loans.

If we put ourselves in the shoes of the parties as of the time the contract was made, the meaning of the contract as written is very clear, and quite beyond the range of fair debate. Upon the record as it stood at the time, it is obvious that, under the undisputed evidence, the mutual, practical construction put upon the contract by the parties thereto, up to a short time prior to the bringing of the suit, was as contended by appellant. The trial court erred in directing a verdict for appellees upon the record as it then stood. We hold now only that the trial court erred in directing a verdict for appellees, upon the record as made, and in entering judgment on such directed verdict. No other question is submitted to us.

The judgment of the trial court is accordingly reversed and the cause remanded for further proceedings consistent herewith.—*Reversed and remanded.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.