## FIRST STATE BANK OF TERRELL v. RIDDLE et al. (No. 7034.)

(Court of Civil Appeals of Texas. Austin. Dec. 8, 1926.)

1. **Appeal and error ⟐⟐843(4)—Appellate court need not consider special exceptions, where trial court sustained general demurrer to petition.**

Where trial court sustains general demurrer to petition, it is unnecessary for appellate court to consider special exceptions which were also sustained.

2. **Pleading ⟐⟐214(1)—Allegations of petition are accepted as true on general demurrer.**

Allegations of plaintiff's petition must be accepted as true upon general demurrer.

3. **Guaranty ⟐⟐36(3)—Bank's officers, under agreement to pay all "existing" liability of bank, held liable on uncollectible notes rediscounted to plaintiff upon which indorsement without recourse was permitted in consideration of guaranty.**

Officers of bank which had rediscounted notes to plaintiff, who agreed to pay plaintiff "each and every obligation, indebtedness, or liability now existing" in favor of plaintiff against their bank, on condition that bank be released from liability on such notes, are liable on those notes which were uncollectible; indorsement without recourse permitted in consideration of guaranty not making obligations nonexisting within intent of guaranty.

4. **Guaranty ⟐⟐27—Intention of parties to guaranty must be determined and given effect.**

In construing contract of guaranty, effect must be given intention of parties as ascertained by interpretation of terms used.

5. **Evidence ⟐⟐448—Circumstances may not be considered in determining intention of parties to unambiguous contract of guaranty, but otherwise, if ambiguous.**

Intention of parties to contract of guaranty must be determined from language of contract, if not ambiguous, but may be determined from circumstances surrounding transaction, if contract is ambiguous.

6. **Guaranty ⟐⟐27—Practical construction of parties to contract of guaranty should be given great weight.**

Where parties have given contract of guaranty practical construction, such as by their acts in carrying it out, such construction should be given great weight in determining interpretation.

7. **Guaranty ⟐⟐27—Rule of strict construction of contracts of guaranty is subordinate to construction that effectuates intent of parties.**

Rule that contracts of guaranty are to be strictly construed and all reasonable doubts resolved for guarantor is applied only after effect and scope of contract are determined by rules applied to other contracts, and does not prevent construction effectuating intention of parties.

8. **Guaranty ⟐⟐27—Ambiguous contract of guaranty may be explained by construction put on it by guarantors, and in light of conditions and circumstances.**

Where contract of guaranty is not clear, complete, and unambiguous on its face, it may be explained by construction put on it by guarantors, and in light of conditions and circumstances which brought it into existence.

Error from District Court, Kaufman County; Joel R. Bond, Judge.

Suit by the First State Bank of Terrell against George W. Riddle and others. From a judgment sustaining demurrer and exceptions to the petition, plaintiff brings error. Reversed and remanded.

Ed R. Bumpass, of Terrell, and W. A. Wade, of Dallas, for plaintiff in error.

BAUGH, J. [1] This is an appeal from the judgment of the district court of Kaufman county, sustaining the general and special exceptions of defendants in error, defendants below, to the petition of plaintiff in error, plaintiff below. The parties will be designated as in the lower court. In addition to the general demurrer, defendants lodged 15 special exceptions to plaintiff's petition, all of which were sustained. But having sustained the general demurrer, it is unnecessary for us to consider the special exceptions. Kyle v. Higginbotham, 288 S. W. 572; Moore v. Krenek, 288 S. W. 580; Red Oak Electric Gin Co. v. Bank (Tex. Civ. App.) 279 S. W. 884.

[2] According to the allegations in plaintiff's petition, accepted as true upon general demurrer, plaintiff was a banking corporation doing business at Terrell, Tex., in May, 1920, and continuously thereafter. The defendants George W. Riddle, H. L. Gamble, and E. D. Coston were the officers, directors, and stockholders operating the First State Bank of Scurry, at Scurry, Tex., a corporation having a capital stock of $10,000. The Scurry bank had rediscounted to the Terrell bank about $22,000 in notes, payable to its order, by its customers, and their payment was guaranteed by the indorsement of the Scurry bank. Most, if not all, of these notes bore 10 per cent. interest, but, upon rediscount the Terrell bank, plaintiff, received only 8 per cent. interest, the 2 per cent. going to the rediscounting Scurry bank. On or about May 22, 1920, the state banking department found that the Scurry bank carried liabilities in excess of the amount allowed by law and demanded that it reduce its liability on the rediscounted notes indorsed to the Terrell bank. The Terrell bank was unwilling to release the Scurry bank from its indorsement on the rediscounted notes unless the Scurry bank secured it against loss on said notes in some other manner. To avoid being closed

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by the state banking department, the defendants individually, in consideration that the plaintiff carry these $22,000 in notes without liability against the Scurry bank, made and entered into the following contract of guaranty:

"In consideration of $1 to each of us, cash in hand paid, the receipt of which is by each of us acknowledged, and the further consideration of the First State Bank of Terrell, Tex., extending a line of credit to the First State Bank of Scurry, a corporation in which we are stockholders and directors, we, the undersigned, jointly, severally, and personally promise and agree to pay to said First State Bank at Terrell, Tex., each and every obligation, indebtedness, or liability now existing or which may hereafter in any manner exist or be incurred on the part of said corporation to the First State Bank, whether such indebtedness or liability shall exist in the shape of notes, overdrafts, accounts, discounts, renewals, extensions of notes, or accounts, or otherwise, and we each hereby personally waive presentment for payment, notice of nonpayment, protest, and notice of protest and diligence upon all notes and accounts now or hereafter executed or indorsed, transferred, guaranteed or assigned, or discounted by our said corporation to the said First State Bank.

"It is further agreed that notice of future advances, extensions, and renewals by said bank of said corporation are by each of us personally waived, and it is fully understood by us that future lowans (loans and) renewals, and advances made and to be made by said bank to said corporation are induced and based upon consideration of this agreement, and this our personal obligation to said bank. That said bank shall be under no obligation to notify us, or either of us, its acceptance hereof.

"It is further understood, and the undersigned hereby agree and consent, that said First State Bank or its agents, may, in their discretion, take and receive from said corporation any security whatsoever, mortgage, personal or other property at any time or times, and grant any extensions to said corporation without in any way affecting the liability of the signers hereto, or either of them, from this obligation. Each one signing this instrument is bound, according to the purport of it, without regard to any understanding that any person shall also sign this instrument or agreement whatsoever. That this is an unlimited and continuous obligation as to time and amount, and shall remain in full force until revoked by written notice to said corporation.

"That if this obligation is revoked by either of us, it shall nevertheless be binding upon the remaining signers hereto, until revoked by each personally in writing.

"Witness our hands this the 22d day of May, A. D. 1920.                    George W. Riddle.
                                  "H. L. Gamble.
                                  "E. D. Coston."

Plaintiff further pleaded that defendants themselves had placed the interpretation on said contract of guaranty that it did include and cover the $22,000 in notes transferred to the Terrell bank, and all renewals and extensions of same, and set out correspondence between said bank and the defendant Gamble showing such interpretation. It further alleged that renewals and extensions of these notes were made by it with the makers of said notes at the instance and request of the defendant Riddle, who was president and principal stockholder of the Scurry bank; that it was the intention of all the parties at the time that said guaranty was to protect the Terrell bank on the rediscounted notes; that all parties had so acted upon it; that defendants were estopped to now assert the contrary; and that, if said contract were ambiguous or capable of more than one interpretation, parol evidence should be admitted to explain its true meaning and the intention of the parties who made it. Then followed an allegation that approximately $13,000 of said notes, same being originals, extensions, or renewals of those originally rediscounted to plaintiff by the Scurry bank, were uncollectible, and a prayer for recovery of the amount thereof under said contract of guaranty. Attached to the pleadings as "exhibits" are lists of the notes assigned originally to the Terrell bank on May 22, 1920, and those remaining uncollected on March 31, 1924.

[3] Defendants in error have filed no brief. From statements in plaintiff in error's brief and the first and second special exceptions of defendants in error, which are, in effect, general demurrers, we take it that the trial court in sustaining the general demurrer, took the view that the contract of guaranty protected only the obligations upon which the First State Bank of Scurry was liable; that said bank having transferred the notes in question "without recourse," such notes were no longer any obligation against said Scurry bank, and by giving a strict construction to the contract as against the guarantor, the defendants were therefore not liable.

We think that the trial court was clearly in error. The Scurry bank's indorsement in blank on the $22,000 in notes sold by it to the Terrell bank was an "existing liability" of the Scurry bank, at the time the defendants executed the contract of guaranty, and was the very liability of the Scurry bank from which the bank examiner had demanded that it relieve itself. To do so, it must change its indorsement. This the plaintiff refused to permit, unless furnished with some other or substitute security on these notes. In the contract the defendants secure the plaintiff, not only as against renewals, extensions, etc., but also agree to pay plaintiff "each and every obligation, indebtedness, or *liability* now *existing*" in favor of plaintiff against the Scurry bank. (Italics ours.) And it was not until defendants had executed such contract that plaintiff relieved the Scurry bank from liability on its indorsement of the rediscounted notes. Thus from plaintiff's pleadings it appears that the cause of action asserted by it was expressly provided for and included in the language of the contract itself.

[4, 5] But if it be conceded that such contract does not expressly protect plaintiff in the premises and is capable of a different construction, we are of the opinion that plaintiff has pleaded a good cause of action, in any event. In construing such contracts, the general rule is laid down in 28 C. J. 930, as follows:

"In ascertaining the meaning of the language of a contract of guaranty, the same rules of construction control as apply in the case of other contracts. In accordance with such rules, the important question is, if possible, to determine and give effect to the intention of the parties as ascertained by a fair and reasonable interpretation of the terms used and the language employed in the contract of guaranty as read, when necessary, in the light of the attendant circumstances and the purposes for which the guaranty was made. Where there is no ambiguity in the language of the contract, the instrument itself must be consulted in ascertaining the intention; but if the language is ambiguous, the situation of the parties and the circumstances surrounding the transaction may be looked at to ascertain the intention of the parties."

[6] It is also there stated that:

"Where the parties have given the guaranty a practical construction, such as by their acts in carrying it out, such construction should be given great, if not controlling, weight in determining its proper interpretation. * * *"

In the instant case, plaintiff pleaded facts and correspondence showing that the defendants had given to their contract the same interpretation on which it seeks to recover.

[7] As stated in Hill Mercantile Co. v. Rotan Grocery Co. (Tex. Civ. App.) 127 S. W. 1082:

"It is a well-settled rule of law that contracts of guaranty and suretyship are to be strictly construed, and all reasonable doubts resolved in favor of the guarantor or surety."

But such a rule does not militate against a construction which will effectuate the intention of the parties. Gardner v. Watson, 76 Tex. 25, 13 S. W. 39. And such rule is applied only after the legal effect and scope of such contract is determined by the same rules of construction as are applied to other contracts. Taylor v. First State Bank of Hawley (Tex. Civ. App.) 178 S. W. 35; Cooper Grocery Co. v. Eppler (Tex. Civ. App.) 204 S. W. 338.

In First National Bank of Hawarden v. Branagan, 198 Iowa, 453, 198 N. W. 659, 36 A. L. R. 548, in which the facts are somewhat similar to the facts in this case, and wherein the contract was capable of more than one construction, the court used the following language, which we deem applicable here:

"It is well settled that, for the purpose of such construction, the court will and should look into the circumstances surrounding the parties, and will stand in their shoes for the moment, and therefrom will look to the general mutual purpose and intent of the parties in entering into such contract. * * *

"The evidence of the antecedent correspondence was properly received for that purpose alone. It was the duty of the court to construe the terms of the contract in the light thereof, though it was not permissible to the court to contradict or vary such terms of the contract. The respective interpretations of the contract contended for by the parties do not involve any contradiction or variation of the literal terms of the contract though the two interpretations contended for do contradict each other. The construction contended for by the defendants would be subversive of the general purpose of the parties in entering into the contract, as indicated by the antecedent and contemporaneous correspondence, in that it would reduce the contract of guaranty to an absolute nullity. It would render the guaranty wholly ineffective and without any application to the transactions actually had between the two banks. The Emmetsburg bank never did owe the Hawarden bank any sum on any note or notes 'executed by it'; nor was it contemplated that the Emmetsburg bank should become liable upon its indorsement of notes transferred by it; nor did it ever make any such indorsement, except 'without recourse.' To have indorsed the notes would have rendered the whole plan ineffective. Its very purpose was to relieve the Emmetsburg bank of that liability and thereby to bring it within the requirements of the law. Such was the very contingency which called for the personal guaranty of the directors to take the place of the liability of the bank as an indorser."

[8] And so, in this case, if the contract set out above cannot be said to be clear, complete, and unambiguous on its face, under the facts pleaded, it was open to explanation both by the construction put upon it by the defendants themselves, and in the light of the conditions and circumstances which brought it into existence. According to plaintiff's allegations, the sole and only purpose of the contract was to enable the defendants, as individuals, to protect the plaintiff bank against loss on notes which the banking department had demanded that the Scurry bank, owned by the defendants, relieve itself from, and to now construe said contract otherwise would be to render it a nullity. The judgment of the trial court is reversed and the cause remanded for trial.

Reversed and remanded.