### JARECKI MFG. CO. v. HINDS.   (No. 247.)

Court of Civil Appeals of Texas. Eastland.
March 25, 1927.

On Motion for Rehearing June 3, 1927.

1. Evidence ⬦450(11)—Telegram guaranteeing "payment 5,000 ft. wire line * * * not to cost over $1,050" held unambiguous as affects admissibility of evidence to aid construction.

Telegram, "I guarantee payment 5,000 ft. wire line for * * * not to cost over $1,050," held unambiguous as affects admissibility of evidence of intent of parties to aid construction in action against guarantor.

2. Guaranty ⬦27—Principal and surety ⬦59—Liability of guarantor or surety can be preserved only by strict compliance with terms of contract.

The liability of one agreeing to answer for the debt, default, or miscarriage of another. whether he be considered a surety or a guarantor, can be fixed and preserved only by strict compliance with the terms of the guaranty.

3. Principal and surety ⬦99—If creditor and principal debtor vary terms of contract, new contract is made and surety is not obligated thereon.

If a creditor and the principal debtor vary in any degree the terms of the contract, a new contract is formed on which surety of debtor is not obligated and cannot be bound.

4. Guaranty ⬦27—Liability of guarantor cannot be extended by implication.

Liability of a guarantor cannot be extended by implication, as can liability of the principal debtor.

5. Guaranty ⬦53(1)—Change in contract releases guarantor, even though it would have otherwise benefited him.

The rule that any change in contract releases guarantor of one of parts is not altered by the fact that the change may benefit the guarantor.

6. Evidence ⬦448—"Ambiguous," as descriptive of language of contract, denotes that it is susceptible of more than one meaning.

"Ambiguous," within rule as to admissibility of evidence in aid of ambiguous contract, denotes that language is susceptible of more than one meaning.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ambiguous.]

7. Guaranty ⬦27—Intent of parties to guaranty contract controls construction, and must be determined from terms of instrument unless ambiguous.

In construing contracts of guaranty as other written contracts, the intention of the parties is controlling, and is to be determined from the terms of the instrument itself, unless such terms are ambiguous.

8. Guaranty ⬦21—Guarantor of payment for wire line held not estopped to deny liability for want of strict compliance with contract.

In action on contract guaranteeing payment for 5,000-foot wire line not to cost over $1,050, evidence that defendant, after receiving bill and letter disclosing that line delivered was 4,500 feet long, had conference with regard to payment of the account and admitted liability therefor, held insufficient to estop him from denying liability on the ground that terms of guaranty had not been strictly complied with.

9. Guaranty ⬦21—Guarantor of payment for wire line, who never in fact became bound, held not to have waived right to deny liability.

Guarantor of payment of 5,000 foot wire line not to cost over $1,050, who through failure of seller to strictly comply with terms of contract never became bound, held not to have waived right to deny liability.

10. Trial ⬦350(4)—In action on guaranty of payment for equipment for oil property, refusal of issue whether defendant owned interest in property as basis for claim of primary liability held not error.

In action on guaranty of payment for 5,000-foot wire line not to cost over $1,050, refusal to submit special issue whether defendant guarantor, at the time of sale and delivery of the line, owned any interest in oil property on which it was to be used, held not error; the mere fact of ownership of interest in well being insufficient to establish a primary liability independent of liability as guarantor.

11. Trial ⬦140(2)—Peremptory instruction cannot be predicated alone on uncontradicted testimony of party to action.

A litigant has the right to have the jury pass on uncontradicted testimony of the adverse party, and a peremptory instruction cannot be predicated on such testimony.

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On Motion for Rehearing.

**12. Guaranty ⬥78(1)—In action on guaranty of payment for wire line, where primary liability was not pleaded, exception to answer setting up breach of warranty should have been sustained.**

In action on guaranty of payment for wire line to be used in development of oil property, where petition was insufficient as a pleading of any primary liability on part of defendant guarantor, *held* special exception to paragraph of answer setting up that line was defective, and that plaintiff had impliedly warranted it, should have been sustained.

**13. Guaranty ⬥78(1)—Guarantor of purchase price cannot set up seller's breach of warranty.**

As general rule, guarantor of purchase price of goods, not being a party to seller's warranty, cannot set up, in defense of his liability as guarantor, seller's breach of such warranty.

**14. Guaranty ⬥36(5)—Guaranty of payment for 5,000-foot wire line (21 cents per foot), if ambiguous, held insufficient to show liability for 4,500 feet wire at 21¾ cents per foot.**

Telegram, "I guarantee payment 5,000 ft. wire line * * * not to cost over $1,050" (21 cents per foot), if construed as ambiguous and subject to extraneous proof of intent of parties, *held* insufficient to support action for purchase price of 4,500 feet of wire at 21¾ cents per foot.

Appeal from Eighty-Eighth District Court, Eastland County; Elzo Been, Judge.

Action by the Jarecki Manufacturing Company against W. S. Hinds. Judgment for defendant, and plaintiff appeals. Affirmed.

Turner, Seaberry & Springer, of Eastland, for appellant.

Sayles & Sayles, of Abilene, for appellee.

HICKMAN, J. The appellant is engaged in the business of selling tools and other supplies for drilling oil wells at Eastland, Tex. On March 3, 1924, Robert D. Gordon applied to appellant to purchase a wire line for use in drilling or completing the drilling of a well on the Sneed farm near Eastland. Credit was denied him by appellant, whereupon Gordon informed appellant that the appellee, W. S. Hinds, who resided at Baird, Callahan county, Tex., would guarantee the payment of the price. The manager of appellant called appellee by long-distance telephone, and appellee agreed to guarantee such payment, but was informed by appellant's manager that such guaranty must be by telegram, as his instructions were not to accept an oral guaranty. Following this telephone conversation, the following telegram was sent by appellee to appellant:

"Baird, Texas, March 3, 1924.

"Jarecki Mfg Co Eastland Tex I guarantee payment five thousand ft wire line for J U Johnson or R D Gordon not to cost over one thousand fifty dollars     W S Hinds"

After the receipt of this telegram, appellant delivered to Gordon a wire drilling line 4,500 feet in length, for which it charged 21¾ cents per foot. The account never having been paid, suit was instituted by appellant against appellee upon his guaranty, the petition alleging, as a reason for not joining Gordon in the suit, that Gordon was "hopelessly insolvent," and also that he was a nonresident of this state. The trial was before a jury, and at the conclusion of the testimony the court, at the instance of appellee, Hinds, and over the objection of appellant, instructed the jury to return a verdict in favor of appellee, upon which verdict so returned by the jury judgment was entered that appellant take nothing by its suit.

The question to be determined by this court is whether or not there was any evidence upon which the jury should have been permitted to pass. Appellant has briefed six assignments of error, and an understanding of our views of the questions raised can be arrived at only by a discussion of these various assignments.

[1] By the first assignment of error appellant raises the question that the language of the telegram was ambiguous; that by its terms it guaranteed a line not to cost over $1,050, which language within itself, taken in connection with all of the facts and circumstances surrounding the execution of the telegram and the subsequent conduct of the parties with reference to the subject-matter, evidenced a clear intention by the parties that there should be some variation in price, and, by necessary implication, some variation in length; the price being figured according to length. Wherefore, it claims that it substantially complied with the conditions of the guaranty. This assignment calls for an examination of the language of the telegram itself.

[2] When one person assumes to answer for the debt, default, or miscarriage of another, whether such assumption constitutes him a surety or a guarantor within the technical meaning of the two terms, his liability upon such undertaking can be fixed and preserved only by a strict compliance with the terms of the guaranty. It has been often said that he is a favorite of the law. His obligation does not extend one jot or tittle beyond what is "nominated in the bond." Smith v. Montgomery, 3 Tex. 199.

[3] If the creditor and the principal debtor vary in any degree the terms of the contract, then a new contract has been formed, upon which new contract the surety is not obligated and cannot, therefore, be bound. Ryan v. Morton, 65 Tex. 258.

[4, 5] As to the principal debtor, liability may be extended by implication; but not so as to the guarantor. There is no implied liability upon the part of the guarantor, who

did not receive the benefit of the contract. Nor is the rule altered by the fact that the guarantor was benefited by the change. To permit inquiry as to whether or not the guarantor was benefited by a change of contract would be, in effect, for the court to make his contract for him, and determine whether or not it was a wise one, and would lead into a vast variety of speculation. Lane & Saylor v. Scott & Culver, 57 Tex. 367.

These observations lead to the conclusion that, if the language of the telegram is unambiguous, then certainly appellee would not be bound thereby, because he guaranteed payment for a 5,000-foot line at a maximum cost of 21 cents per foot, and is being sued for the price of a 4,500-foot line at 21¾ cents per foot.

[6, 7] Without undertaking to give an accurate definition of the word "ambiguous," as used in connection with the construction of the language of a written contract, it unquestionably denotes that the language is susceptible of more than one meaning. If the language of this telegram is susceptible of more than one meaning, then other facts and circumstances surrounding the transaction should properly be considered by the court in arriving at the real intention of the instrument. In construing contracts of guaranty, as other written contracts, the intention of the parties is controlling; but their intention in the case of a contract of guaranty must be arrived at by the terms of the instrument itself, unless such terms are ambiguous. Appellant insists that this language is ambiguous, because some latitude in price was allowed. We cannot agree to this construction. The only latitude of price allowed was a maximum price fixed at 21 cents per foot. It would be difficult to imagine words less free from ambiguity than those expressing the length of the line to be sold. A 5,000-foot line means a line 5,000 feet in length; and to explain away that statement and read into it a guaranty of a line 4,500 feet in length, upon the theory that the language used was ambiguous, would, in our opinion, be a strained construction. Appellant failed in two important particulars to deliver the line described in the telegram of guaranty. The price was in excess of the maximum price fixed by appellee, and the length was materially less than that fixed by the telegram. A slight variation in the length might not have had the effect of changing the contract, but so material a variation as 500 feet in length is certainly not a substantial compliance with the contract.

The cases cited by appellant in support of this assignment most strongly sustaining their position are Cooper Grocery Co. v. Eppler (Tex. Civ. App.) 204 S. W. 338, and Menefee v. Bering Mfg. Co. (Tex. Civ. App.) 166 S. W. 365. In the Eppler Case, the guarantor, being a stockholder in the Eppler Mercantile Company, guaranteed a merchandise account of Eppler Mercantile Company, a corporation. After the letter of guaranty was written, the charter of the corporation expired, and a new charter was taken out under the same name; the corporate powers of the new corporation being in some respects enlarged. The wholesale house continued to sell to Eppler Mercantile Company after the new charter was procured. In a suit upon the guaranty, the guarantors defended on the ground that the letter of guaranty could not be held to cover debts due by a new corporation; that the new corporation was a separate and distinct entity from the original corporation, and no liability existed as to the account contracted after the new charter was granted. The question involved was merely whether or not the mere fact of a new charter and certain changes of powers under the charter constituted a new and separate entity. The Austin Court of Appeals, in an opinion by Special Judge Brady, held that the real intention of the parties was to cover the account of this particular concern, and that the obtaining of a new charter did not terminate the guaranty.

The case of Menefee v. Bering Mfg. Co., supra, is clearly distinguishable upon the facts and principles discussed from the case under consideration. Menefee sold the appellee a lot of railroad ties to be shipped to a certain place. He shipped about seventeen cars in excess of the amount ordered by the purchaser, who declined to receive them. The railroad company held these excess cars at the place of destination for the payment of freight, demurrage, and unloading charges. Finally the appellee wrote Menefee, suggesting that the best solution would be to pay these railroad charges and have the ties unloaded. In answer to the letter, Menefee wired the appellee as follows:

"Unload our ties. Will reimburse you freight charges."

The appellee paid the freight, demurrage, and unloading charges. Menefee defended the suit for reimbursement on the ground that the telegram did not authorize the payment of demurrage charges. The court was clearly correct in holding Menefee liable for such charges. The principles of suretyship and guaranty do not apply to the facts of that case. The appellee was acting for the benefit of Menefee at his request, and the reason for the rule of strict construction of guaranty contracts would have no application. We have concluded that neither upon principle nor authority can the wording of the telegram under construction be construed to be ambiguous, and appellant's first assignment of error is therefore overruled.

[8, 9] The second and third assignments of error raise the question that the appellee participated in a course of dealing contrary to the original undertaking, and admitted his

liability after the notice of lack of strict compliance with his contract; and, by reason thereof, waived his right to insist upon a strict performance of the original undertaking, and is estopped to do so. We find no elements of estoppel on account of the conduct of the appellee. The fact that a bill had been sent to appellee and a letter written him, in which it was disclosed that the length of the line delivered was 4,500 feet, and thereafter appellee had conferences with appellant with reference to the payment of the account, in which he admitted his liability therefor, are insufficient to constitute an estoppel. But, independent of the estoppel, appellant insists that appellee has voluntarily waived his right to insist upon a strict compliance with the contract. The leading Texas authority relied upon by appellant to support its contention of waiver is the case of Stanley v. Evans, 33 Tex. Civ. App. 535, 77 S. W. 17. Under the facts of that case, the guarantor was claiming a discharge by reason of a contract between plaintiff and the principal obligor, whereby the time for performance of the contract guaranteed by him was postponed for a valuable consideration to a later date. He was unable to prove the facts pleaded. The most that he established was that the plaintiff, without any consideration, indulged the principal obligor in his delay, but at all times was demanding a strict performance of the contract in all its terms, which conduct was acquiesced in by the guarantor. Under these facts the guarantor was never discharged, and had nothing to waive. The opinion did state that it would seem that the guarantor might waive his discharge without any new consideration. While that statement was not necessary to a decision of that case, yet, even if so regarded, it would not avail appellant under the facts of this case. Under that rule, a guarantor having been originally bound, might waive a defense that he had been released from his undertaking; but in this case the guarantor had never been bound. There is nothing to waive until the liability is somewhere fixed. We do not think there has been any waiver of any defense by the appellee in this case, because he has never been bound, and assignments 2 and 3 are therefore overruled.

By its fourth assignment of error, complaint is made of the refusal of the trial court to submit to the jury a special issue calling upon the jury to determine whether or not it was the intention of appellee at the time of the execution and delivery of the telegram of guaranty to guarantee the payment of the 4,500-foot drilling line sued for by the appellant. Clearly the basis and foundation for this assignment is the fact that the telegram was ambiguous. Having held that the telegram was not ambiguous, it necessarily follows that we must overrule this assignment, because appellant does not contend that it is the province of the jury to construe an unambiguous written instrument.

[10, 11] The fifth assignment of error complains of the action of the trial court in refusing to give to the jury a special issue requested by appellant, calling upon the jury to answer whether or not, at the time of the sale and delivery of the wire line in controversy, the appellee, Hinds, had or owned any interest in the Sneed well that was drilled by Gordon with said line. The evidence disclosed that two or three days prior to the telegram of guaranty an instrument was placed of record in the deed records of Eastland county, executed by the Continental Oil & Gas Production Company by Robert D. Gordon, president, conveying to the appellee an undivided one thirty-second working interest in and to the first well only then being drilled upon a certain tract of land therein described, which is conceded to be the Sneed farm. The interest assigned carried no obligation to bear any portion of the expense of drilling the well, but it expressly provided that the grantee, Hinds, should be at no cost or expense in the drilling of the first well, and that, should production be procured, then there should be delivered to appellee, free of expense, an undivided one thirty-second of the total production of oil saved and produced from said well. Appellee denied that he owned any interest in the well, and denied that he placed the instrument of record or knew that the same was placed of record until a short time before the trial. The point is made under this assignment that a denial by the appellee himself, who is a party to the suit, did not overcome the presumption of delivery arising from its registration so as to warrant a court in refusing to submit the issue of ownership for the determination of the jury. This principle is clearly correct. The presumption cannot be overcome by the testimony of the appellee, but such testimony raises only an issue of fact for the determination by the jury. A litigant has the right to have the jury pass upon uncontradicted testimony of the opposite party, and a peremptory instruction cannot be predicated upon such testimony. But the question that confronts us is: Assuming that the issue had been submitted to the jury and assuming that the jury had answered the issue favorable to appellant, that Hinds did own an interest in the Sneed well that was drilled by the defendant Gordon with the line in controversy, could such answer have resulted in the rendition of a different judgment to that which was rendered in this cause? Would the bare fact that Hinds owned an interest in the well which was being drilled with this line, unaccompanied by any other finding of fact, make out a case of primary liability against him? We think not. Something more than mere ownership of an interest in a well

would be required to establish a case of primary liability. Such liability could not be predicated by appellant upon the contract and assignment executed to appellee, because, by the very wording of the assignment, he is exempt from such liability; and no suit based upon such contract could be sustained upon such alleged liability.

We cannot therefore see what materiality there was to the requested issue, taken alone, or what injury appellant suffered by the refusal of the court to submit same to the jury. and this assignment is therefore overruled.

The sixth and last assignment briefed complains of the action of the trial court in overruling a special exception of appellant to the answer of the appellee. It is governed by the same statement, proposition, authorities, and argument as the first assignment of error, and, for the reasons given for overruling the first assignment of error, the sixth assignment is overruled.

Being unable to sustain any of appellant's assignments of error, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

[12] Appellant calls our attention to the fact that its sixth assignment of error did not receive proper recognition in our original opinion. The assignment referred for proposition, statement, authorities, and argument to the second proposition under appellant's first assignment of error. We did not discuss the second proposition under the first assignment of error in our original opinion, and will therefore express our views of the sixth assignment of error more fully.

[13] The assignment complains of the action of the trial court in overruling the special exception of appellant to paragraph 14 of appellee's answer. In that paragraph appellee pleads that the wire line in controversy was defective; that appellant impliedly warranted that same was reasonably adapted for use in drilling a well, and that said warranty was breached. The exception is based upon the proposition that the defense of breach of warranty is not available to a guarantor. The general rule seems to be that, since the guarantor is not a party to the warranty, he cannot set up in defense of his liability the seller's breach of warranty. 24 R. C. L. § 434; 35 Cyc. p. 370; Talley v. Beever, 33 Tex. Civ. App. 675, 78 S. W. 23; El Paso Bank & Trust Co. v. First State Bank of Eustis (Tex. Civ. App.) 202 S. W. 522; Stockton Sav. & Loan Soc. v. Gidding, 96 Cal. 84, 30 P. 1016, 21 L. R. A. 406, 31 Am. St. Rep. 181.

The learned trial judge probably construed appellant's petition in the lower court as a pleading of primary liability against appellee. So construing it, the exception was not good and was properly overruled; but, since appellant by insisting upon this special exception construes its pleading as one seeking to hold appellee liable as a guarantor only, we think it takes out of the case any question of primary liability of the appellee, and the special exception should have been sustained.

The effect of sustaining the special exception, as we view it, is to narrow down the questions presented in this appeal to the one question of whether or not the telegram sent from appellee to appellant was ambiguous. The appellant cannot deprive appellee of his defense of breach of warranty on the ground that the only liability asserted against him is that of guarantor and in the same suit recover judgment against him on the theory of primary liability. Consistency forbids this.

[14] Appellant insists that its case is governed by the case of First State Bank v. Riddle (Tex. Civ. App.) 289 S. W. 199. That case went off on a general demurrer in the trial court. The pleading declared upon a very different contract to the one proved in this case. The last paragraph in that opinion clearly indicates that the holding would have been different had the contract been unambiguous. We do not think there is any ambiguity at all in the telegram in this case, but appellant had the benefit of putting proof on just as if the telegram had been ambiguous, and the proof, to our minds, was conclusive against its pleading that the term "5,000 ft. wire line" was a term of general designation or description. Under this record, if we should hold (which we did not) that the telegram was ambiguous, and that, for that reason, evidence was admissible to explain its meaning, we would still be compelled to hold that the explanation given by the witnesses destroyed, rather than aided, appellant's case.

Carl Angstadt, the first witness placed upon the stand by appellant, testified, in substance, that wire lines are never short as a rule, but always measure a little bit long; that a 5,000-foot line means that it is 5,000 feet or longer. He further testified that a wire line is sold by the foot; that appellant did not sell a 5,000-foot line, because Col. Gordon figured that a 4,500-foot line would be long enough, and he did not see any reason for taking out a 5,000-foot line when a 4,500-foot line was sufficient for the purpose intended; that the only reason why a 5,000-foot wire line was not delivered under the Hinds guaranty as set out in the telegram was because Col. Gordon changed it from 5,000 feet to 4,500 feet. This same witness testified that 5,000 feet of wire line at a cost of $1,050 would figure 21 cents per foot, and that 4,500 feet of wire line at $978.75 would figure 21¾ cents per foot.

It is our conclusion that the telegram was unambiguous. Even if we should be in error in this conclusion, it is our opinion that the evidence above quoted by appellant's wit-

ness clearly shows that appellant sold to R. D. Gordon a wire line different in length to the one described in appellee's telegram and at a price per foot in excess of the maximum price per foot named in the telegram.

Since the original opinion was written in this case, our attention has been called to the case of Housley v. Strawn Merchandise Co., et al. (Tex. Com. App.) 291 S. W. 864. Appellant's evidence brings its case squarely within the rule announced in that case. D. P. Morrison, appellant's salesman who negotiated the sale of this wire line, testified positively that the sale was made to Col. Gordon. No primary obligation of appellee was created by the telegram, even though the main purpose of appellee was to benefit himself by furthering the drilling of a well in which he had an interest. We cite that case also on the questions of waiver and estoppel discussed in our original opinion.

Appellant's motions for rehearing and to certify the case to the Supreme Court are overruled.